| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| GIOVANNI ORANTES – State Bar No. 190060<br>**THE ORANTES LAW FIRM, P.C.**<br>3435 Wilshire Blvd., 27th Floor<br>Los Angeles, CA 90010<br>Telephone: (213) 389-4362<br>Facsimile: (877) 789-5776<br>go@gobklaw.com<br><br><br>☒  *Attorney for: Debtor and Debtor-In-Possession* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| In re:<br>JONG UK BYUN<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:23-bk-12747-VZ<br>CHAPTER: 11<br><br>**DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**<br>[11 U.S.C. §§ 1123, 1125]<br><br>☐ Initial Disclosure Statement and Plan<br>☒ 1st Amended Disclosure Statement and Plan<br>☐ 2nd Amended Disclosure Statement and Plan<br><br>For information on court hearings,<br>see the separately filed notice(s) of hearing. |

On (*specify the "petition date"*) **May 4, 2023**, the Debtor filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code"). This form Disclosure Statement and Plan of Reorganization ("**DS and Plan**") is both the Disclosure Statement ("**DS**") and the Plan of Reorganization ("**Plan**").

**PROPONENT**: The party who filed the DS and Plan ("Proponent") is: ☒ Debtor, or ☐        .

**PLAN**: The terms of the Plan, located at Sections **VIII – X**, comply with the requirements of 11 U.S.C. § 1123, including the proposed treatment of claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners. **The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone**; however, if the Plan is confirmed, the terms will bind the Debtor and any holders of claims or interests treated by the plan.

**DISCLOSURE STATEMENT**: Sections **I – VII** and **XI** constitute the DS and describe the assumptions that underlie the Plan and how the Plan will be executed. The Proponent believes the DS meets the standard for adequate information set forth in 11 U.S.C. § 1125(a). **The information disclosed is for explanatory purposes only and is as accurate as possible.**

Any interested party desiring further information should contact the attorney for Proponent identified above in the box at top left of this page, using the contact information provided.

---

## NOTE ABOUT CITATIONS

**"Chapter, section and §" references** are to 11 U.S.C. §§ 101-1532 of the Bankruptcy Code.

**"FRBP" references** are to the Federal Rules of Bankruptcy Procedure.

**"LBR" references** are to the Local Bankruptcy Rules for the Central District of California.

---

## TABLE OF CONTENTS

| | | DISCLOSURE STATEMENT | Page |
|---|---|---|---|
| I. | | General Disclaimer | 3 |
| II. | | Type of Plan of Reorganization; Important Dates | 3 |
| III. | | Description of Debtor's Past and Future Business and Events Precipitating Bankruptcy Filing | 3 |
| IV. | | Definitions and Preliminary Information | 5 |
| V. | | Source of Money to Pay Claims and Interest-Holders | 7 |
| VI. | | Assets and Liabilities of the Estate | 10 |
| VII | | Treatment of Nonconsenting Members of a Consenting Class | 10 |
| | | **PLAN OF REORGANIZATION** | |
| VIII. | | Plan Provisions: Treatment of Claims | 11 |
| | A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 11 |
| | B. | Unsecured Claims: Administrative Expenses, Taxes | 12 |
| | C. | CLASS # 1: Priority Unsecured Claims | 13 |
| | D | CLASS # 2: Unsecured Claims: Nominal and General | 13 |
| | E. | CLASS # 3, # 4 and #5: Secured Claims | 14 |
| | F. | Shareholder or Partner Interests | 17 |
| | | Additional Claims (if any) Not Identified in Sections VIII.A - VIII.F | EXH H, I, etc. |
| IX. | | Unclaimed or Undeliverable Plan Distributions | 18 |
| X. | | Effect of Confirmation | 18 |
| XI. | | **LIST OF EXHIBITS AND DECLARATIONS** | 18 |
| | | **Mandatory Exhibits** | |
| | | Declaration in Support of Disclosure Statement and Plan | EXH A |
| | | List of all Claims | EXH B |
| | | List of all Property and Valuation of Property as of Confirmation Date | EXH C |
| | | Projected Income, Expenses and Payments by Month/Quarter | EXH D |
| | | Financial Records | EXH E |
| | | | |
| | | **Optional Exhibits** | |
| | | Additional Declarations | EXH F |
| | | Additional Exhibits | EXH G, H, & I |

---

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                    Page 2                              **VZ CH11.DISCLSR.PLAN**

## I.    GENERAL DISCLAIMER

PLEASE READ THIS DOCUMENT CAREFUULY, INCLUDING THE ATTACHED EXHIBITS.  IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, AND WHO IS ENTITLED TO FILE AN OBJECTION TO CONFIRMATION OF THE PLAN.  IT ALSO IDENTIFIES THE TREATMENT THAT CLAIMANTS (CREDITORS) AND ANY INTEREST HOLDERS (SHAREHOLDERS OR PARTNERS) CAN EXPECT TO RECEIVE UNDER THE PLAN, IF THE PLAN IS CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED ON TO FORMULATE THIS DOCUMENT ARE IN **EXHIBIT A**, A DECLARATION.  ALL REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH INFORMATION CONTAINED IN THIS DS AND PLAN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

AFTER CAREFULLY REVIEWING THIS DOCUMENT AND THE ATTACHED DECLARATIONS AND EXHIBITS, PLEASE REFER TO THE SEPARATELY FILED NOTICE OF DATES RELATED TO A HEARING ON MOTION TO APPROVE ADEQUACY OF THE DISCLOSURE STATEMENT, OR HEARING ON MOTION TO CONFIRM THE PLAN.  EACH NOTICE WILL IDENTIFY DATES AND DEADLINES TO FILE A RESPONSE OR OTHER OBJECTION, OR TO SUBMIT A BALLOT IF YOU ARE ENTITLED TO VOTE ON THE PLAN.

## II.    TYPE OF PLAN OF REORGANIZATION;  IMPORTANT DATES

Payments and treatments under the Plan have a starting date ("**Effective Date**"), a period of time after the Effective Date to continue payments ("**Plan Term**"), and a final payment date ("**Final Payment**").

| Plan Type | Effective Date | Plan Term | Final Payment Date |
|---|---|---|---|
| ☐ Liquidating: *See Section V.A.2 below for anticipated sale(s)* <br> ☒ Operating: *See Section III below* | ☐ 14 days after order confirming Plan <br> ☒ Other date:  **The effective date of this Plan is the first day of the month that is a business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.** | ☐ 5 years; or <br> ☒ 12 months (approximately) | *April 2025 (estimates an Effective Date of March 2024)* |

## III.    DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING

A.  <u>PAST AND FUTURE BUSINESS OPERATIONS</u>: The Debtor is organized as a sole proprietorship.  The Debtor conducted over 90 percent of its business activity in *Los Angeles California* since 1993.  Before this case was commenced on (specify the "petition date") May 4, 2023, the Debtor,

☐ provided the following services for pay:

☐ manufactured or sold the following products:

☒ was in the business of renting real estate.  (See Exhibit G for a detailed description of Debtor's property or properties including locations, square footage, occupancy rates, etc.)

☐ was in the business of developing real estate.  (See Exhibit ___ for a detailed description of Debtor's property or properties including locations, size of lot(s), stage of development, etc.)

☒ other: **The Debtor is also in the business of brokering recycled metal and managing a recycling plant.**

The Debtor ☒ will ☐ will not continue this course of conduct.

The Debtor:   ☒ is not a small business debtor within the meaning of 11 U.S.C.§101(51)(d)).

☐ is a small business debtor within the meaning of 11 U.S.C.§101(51)(d)), please see Exhibit for information pertaining to 11 U.S.C. §1116 compliance.

## B. <u>FACTORS THAT LED TO FILING THIS BANKRUPTCY CASE</u> (*Describe briefly*):

1.      Mr. Byun is a single individual. He came to the United States from Korea in approximately 1992 and started engaging in the metal recycling business the following year. He formed Central Metal, Inc. ("CMI") in 1993 and manages that business. Central Metal, Inc. filed a chapter 11 petition on January 8, 2010, Case No. 2:10- bk-l 0642-VZ. Central Metal, Inc. was successful in getting a Plan of Reorganization confirmed on November 2, 2010. A discharge was entered on July 5, 2011. His then-wife and Mr. Byun also filed a personal chapter 11 at about the same time, Case No. 2:10-bk-11241-VZ. They were also successful in getting a chapter 11 plan confirmed by Order entered on March 9, 2011.  A discharge was entered on June 24, 2011. He also filed a case in 2018 and one in 2020, which are discussed further below.

2.      His troubles continuing to this date commenced when Central Metal's largest customer Hyundai Steel Company, Ltd. ("Hyundai") breached its contract with Central Metal to purchase goods.  From 2007 through mid-2016, Central Metal sold Hyundai more than $180 million in recycled materials pursuant to a Memorandum of Understanding. Despite promises to the contrary, which caused Central Metal to purchase additional material handling equipment and expanding its business, Hyundai stopped buying products from Central Metal in 2016 without any formal notice. In breach of its promises to purchase 1.12 million tons of scrap metal since 2008, Hyundai barely purchased approximately 334,400 tons of scrap metal.  As a result of Hyundai Steel's breach of its promises, CMI was never able to recover financially. CMI and, by extension, Mr. Byun have lost approximately $32 Million from Hyundai's failure to purchase 140,000 tons of scrap metal annually. One important detail here is that Hyundai discontinued performing on its obligations to CMI when it made an equivalent promise to Prime Metals U.S.A., Inc. ("Prime Metals") in exchange for the purchase by Prime Metals of certain mortgages against my real properties. Hyundai had previously agreed to purchase these real properties (and be flexible regarding collection) as compensation for Hyundai's breach of purchase agreements with CMI in 2008 (the "Notes").

3.      Such Notes were the basis for Hyundai's attempting to foreclose on Mr. Byun's Los Angeles real properties on August 17, 2020 and then several times later, including on April 15, 2021. Counsel for the Debtor was present at all the foreclosure auctions in anticipation of challenging faulty Notices of Default, but Hyundai eventually replaced the Notices of Default.

4.      In short, Hyundai breached agreements with CMI, which caused CMI to incur losses of tens of millions of dollars in depreciating scrap metal and investments in equipment and expansion of operations. Hyundai then purchased the Notes. However, since Hyundai then continued breaching its promises to buy scrap metal, both CMI and Mr. Byun were unable to perform under the Notes.

5.      Mr. Byun filed a 2020 personal chapter 11 case to stop a foreclosure sale of his real property by the senior deed of trust holder, Hyundai.  The foreclosure sale was set for August 17, 2020. He had previously listed his Los Angeles properties for sale and secured three buyers to purchase all four properties for $34.8 Million, which was less than what he believed he would get if given sufficient time for marketing and due diligence by potential purchasers. However, not even those sales could close before August 17, 2020. Hyundai refused to provide him with any further extension even though the total sales price exceeded Hyundai's claims of approximately $24 Million by roughly $10 Million. When he was unable to convince Hyundai or the Superior Court for the County of Los Angeles to continue the sale, he was forced to file the bankruptcy petition.

6.      Mr. Byun intended to prosecute litigation against Hyundai as part of his previous bankruptcy case. However, in the end, even though he caused to be filed a combined Disclosure Statement and Plan, approval of which came on for hearing and was opposed only by Hyundai (not any of the present creditors who were, in fact, creditors during that case), which had already received relief from stay, and caused to be filed an Amended Disclosure Statement and Plan which no present creditor opposed, including the movant. The hearing on approval of the Amended Disclosure for the Amended Disclosure Statement and Plan was continued several times to permit the Debtor's sale of the Santa Fe Property to pay off Hyundai in a traditional sale as opposed to an foreclosure auction sale. So, instead of prosecuting litigation or the confirmation of a Chapter 11 plan because of the imminent threat of foreclosure by Hyundai, he compromised and paid off Hyundai to preserve the real estate he still has today and paid off Hyundai as well as several secured creditors with the proceeds of the sale of the Santa Fe Property, with address of 8201 Santa Fe Avenue, Huntington Park, CA 90255 ("Santa Fe Property"). In sum, he filed a Chapter 11 case in 2020 in the midst of the COVID-19 pandemic which halted real estate

transactions and environmental inspections. He got an order dismissing it after he sold his biggest asset for $35,150,000 under duress from Hyundai and paid off his largest lienholders, leaving total debt of less than $5,000,000, the majority of which was held by parties which consented to the dismissal either expressly, such as Packo Investments, Inc. or by not filing an opposition to the Motion to Dismiss the case.

7.      After the case was dismissed, he planned to pay his remaining debts over time and attempted to pay off his remaining consensual liens with loans secured by his remaining assets with an aggregate value of about $24 Million and reached agreement with his remaining consensual lienholders, the BAE Family Trust and Mohamad Sanfaz whose claims have been assigned to Packo Investments, Inc. on a compromised collective amount of just $2,100,000, which would increase over time depending on when he could pay the amount which was memorialized in a Settlement Agreement as of May 6, 2022 (the "Packo Settlement Agreement"). He pursued refinancing to pay the Packo Settlement Agreement even though, as detailed below, he doubted the accuracy of the alleged debt. Unfortunately, unlike the Santa Fe Property, the biggest remaining assets were not as easy to use as collateral and the threat of foreclosure discouraged lenders from participating. For the Santa Fe Property, its sale was held up for months or even years by the need to get environmental reports that COVID then prevented from being completed; however, the environmental reports concluded that only about $25,000 was all that was needed to remediate any issues. For the largest remaining Los Angeles real estate, which was used to engage in the same activities as the Santa Fe Property, however, the environmental analyses so far vary but one estimates that the cost for remediation may be as high as $2-2.5 Million depending on the depth of any contamination. However, as Environmental Expert Marvin Sachse testifies in the attachment to his declaration submitted herewith, in his opinion the highest estimated cost of remediation that he can support at this time is of about $640,000. This is good news as it should make it easier to refinance in the near or more distant future. Needless to say, the environmental issues delayed him from getting a loan against the remaining Los Angeles real estate and when he found lenders who would consider lending his money despite the environmental issues, the lenders withdrew when Packo Investments recorded a notice of default on December 21, 2022 and then set a sale date. To top it off, his ability to borrow funds was also thwarted for many weeks when he received a notice of sale at auction of his Los Angeles properties for defaulted property taxes, which had added up while he was in danger of losing all his properties to Hyundai despite the large equity cushion the properties provided to his secured creditors, as we now can confirm. Although he paid them in full, ironically, as Giovanni Orantes attests in his declaration filed concurrently, the movant in two motions for relief from stay encouraged him to file for bankruptcy relief even though it said post-petition that filing for bankruptcy relief now was somehow bad faith. In any event, Mr. Byun believes that he should be more successful in obtaining refinancing at this time given Mr. Sachse's opinion and the protection afforded to lenders by the Bankruptcy laws.

8.      On a parallel track as his attempts to borrow money to satisfy the Packo Settlement, since the Packo Settlement Agreement had no release of claims, his company and Mr. Byun engaged a real estate attorney, Matthew Eanet, who reviewed the loans in which Packo Investments was involved with him or Central Metal, Inc. over the years and concluded that there were anomalies that warranted the filing of a complaint against Packo Investments and other people involved. In the spirit of cooperation, he shared a substantially final version of the complaint with Packo Investments one month before filing it for Packo Investments to explain itself and, therefore, avoid litigation. In other words, Mr. Byun wanted to know if Packo Investments and its principal, Allen Park, actually had been paid well over $3.4 Million as payment at least in full through the sale of his Santa Fe Property for a $2 Million note that he had already paid before, as his records indicated. However, he never received any feedback on those allegations and had to file the complaint. The Court presiding over that lawsuit initially issued a temporary restraining order against selling the remaining Los Angeles real estate, but ultimately did not issue a preliminary injunction. It was not until the hearing on the Application for a Preliminary Injunction that Packo Investments produced alleged notes adding up to about $2,000,000 that it claimed are the notes that were replaced with the $2 Million note filed with its proof of claim. Although usury claims and other claims in the complaint against Packo Investments, Inc. appear to remain valid, the claim that the over $3.4 Million I paid Packo Investments from the Santa Fe Property sale should have gone to satisfy the BAE Family Trust and Mohamad Sanfaz notes that Packo has now acquired did not appear viable. Thus, the filing of the present Chapter 11 case was needed to preserve the properties with a value of about $24 Million for the benefit of not only Mr. Byun but also of his relatively few remaining creditors in addition to Packo Investments (as assignee).

9.      For months and even days before the present bankruptcy petition was filed, through his representatives, he engaged in negotiations with lenders who were willing to lend me money to pay off Packo Investments to stop the pending foreclosure; however, a transaction could not be completed at that time, but he will still pursue getting loans post-petition while also filing a plan of reorganization for confirmation.

10.     Packo denies and disagrees with the Debtor's assertions regarding Packo.

11.     Mr. Byun's real estate assets have significant equity and, as an appraiser he retained to produce appraisal reports testifies, are not decreasing in value. However, due to the impact capital gains taxes would have on sales, continuing to operate his business that provides him with close to $100,000 in monthly income is the best use of the properties. He is submitting declarations from an appraiser for real estate assets concurrently. Thus, again, Mr. Byun owns real estate with values and claims against them of an appraised $24,000,000 and has debts of about less than $8 Million as set forth in that chart attached hereto as Exhibit B. As set forth in such chart, which he caused to be prepared,

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                    Page 5                                    **VZ CH11.DISCLSR.PLAN**

subtracting his debts from the value of his properties results in a global equity amount of approximately $16,000,000 less costs for remediation which Mr. Sachse estimates at about $640,000. Allowing anybody to foreclose on his properties would be patently unfair, especially since they all had given up on recovering anything until his advisors and Mr. Byun managed to realize $35,150,000 in sales proceeds from the sale of the Santa Fe Property in the immediately previous bankruptcy petition despite their arguments doubting the veracity of his testimony about the value of his properties and his commitment to pay his creditors plus about $2 Million dollars in rents that accumulated after filing his 2020 petition, which were paid to Hyundai.

12.     In summary, Mr. Byun prosecuted his last case diligently and in good faith and eliminated almost 90% of his debt before his last case was dismissed.

13.     Similarly, after his 2018 bankruptcy case, in which he did attempt to sell his biggest property (which he ultimately sold contrary to doubts from constituents), he endeavored to resolve the financial issues that led to his need for reorganization to avoid having to re-file at all. Among other things, he allowed one of my properties to be foreclosed, sold one of his properties for $2,250,000.00 and paid down claims, including property taxes by $2,239,921.37 on or approximately February 6, 2020. He also, again, sought refinancing of the largest claim against his, which was allegedly held by Hyundai Steel Company and was likely to secure bridge financing, if needed. However, most importantly, he entered into lease agreements for his real estate assets which currently over $173,276.61per month (which was set to increase to $195,165.84 starting in November 2020) and then would increase to $262,906.26 after August 2021 should the tenant of his 8021 Santa Fe Avenue property obtain a full conditional use permit, which should have enabled him to fund a Chapter 11 plan of reorganization, especially in light of the historically low interest in effect at the time and for the next year or longer. A 30 year mortgage to repay the aforementioned total of $30,537,420.07 would have had a monthly payment of $145,790.30 with 4% interest or $150,225.80 at 4.25%, for example. It should also be highlighted that the alleged holder of the vast majority of his debt (previously defined as "Notes"), Hyundai, was a defendant in an action by Chapter 7 Trustee Richard Marshack on behalf of the previous holder of the Notes, Prime Metals, U.S.A., Inc. by which Trustee Marshack sought, among other things, to set aside as preferential or fraudulent, the transfer of the Notes to Hyundai.

14.     Importantly, too, as ultimately proven accurate but discounted by Hyundai to the Court, the Environmental Protection Agency ("EPA") carried out its analysis of his properties and its conclusion is that the "EPA found little chemical contamination on your facility; ..." The relatively clean environmental condition of his property should have made reorganization in my 2018 Chapter 11 case possible, but the case was dismissed after the Court granted relief from stay to Hyundai despite his filing a combined Disclosure Statement and Plan and an Amended Disclosure Statement and Plan.

15.     At this time, despite the originally predicted capital gains tax consequences of the sale of the Santa Fe property, his circumstances are now propitious to confirm a Chapter 11 plan because recently filed proofs of claim show that his tax liability is only $2,134,357.98 for the federal government and about $1,175,829.28 for the State of California. His financial outlook is now much better than during the pendency of the previous case, especially since he has equity in his properties of over $15 Million over and above about $8.242 Million in debt.

16.     When compared against his monthly income, it is clear that he can afford his plan and may speed up recovery by creditors if he is able to borrow against his properties in conjunction with remediating the environmental concerns discussed in Mr. Sachse's declaration.

17.     The foregoing notwithstanding, since the Court may not confirm an installment plan, Debtor is also retaining a loan broker to arrange a loan secured by his real estate assets valued at about $24 million in an amount sufficient to pay off all of his debts, which appear to be less than about $8 Million. Simultaneously, he is also listing two of his real estate assets for sale, parcels commonly known as (1) 2245 Alameda Street, Los Angeles, CA (APN 5167-015-063) with an appraised value of $4,990,000 and (2) 1736 E. 24th Street, Los Angeles, CA (APN 5167-015-067) with an appraised value of $6,010,000. The aggregate proceeds from the sale of the two parcels, net of expenses and capital gains taxes (of about $3.3 Million) plus funds in his bank accounts at the time, should suffice to pay off all his debts. If necessary, he would also sell that parcel used for parking that is commonly known as 1746 East 22nd Street, Los Angeles, CA (APN 5167-015-068) with an appraised value of $650,000. Obtaining a loan may take approximately three to six months while closing on a sale of the properties would take approximately 12 months.

18.     It should also be noted that two parties have obtained relief from stay. Creditors Adjustment Bureau obtained an order granting relief from stay for the reasons stated on the record of the hearing to take all steps necessary to foreclose but not to actually sell the parcel used for parking that is commonly known as 1746 East 22nd Street, Los Angeles, CA (APN 5167-015-068) until May 9, 2024. Likewise, Mohamed Sanfaz obtained an order for relief from stay to take all steps necessary to foreclose on the Debtor's Contiguous Properties, as defined below in Section VI.C., but not actually conduct a foreclosure sale until May 4, 2024. Lastly, Mohamed Sanfaz filed a Motion to Dismiss or Coinvert the case, but the Court denied it.

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                     Page 6                     **VZ CH11.DISCLSR.PLAN**

C. **FUTURE FINANCIAL OUTLOOK:** Proponent believes that the Debtor's economic health has, or will, improve from its prebankruptcy state for the following reasons. (*Describe briefly*)

As the Debtor's projections in Exhibit D and his financial situation in Exhibit E evidence, Mr. Byun's income of almost $90,000 per month is sufficient to fund interest payments to his secured and priority unsecured claimholders while he refinances his debts or sells his two or three of his properties to fund paying all his claimholders in full.

D. **PROPOSED MANAGEMENT OF THE DEBTOR:**

1. Names of persons who will manage the Debtor's business affairs: The Debtor will continue to manage his business affairs.

2. Proposed compensation to persons listed above: The Debtor will fund his ongoing modest living expenses after satisfying his obligations under this Plan from rental income.

3. Qualifications of persons listed above: The Proponent has operated businesses for about 29 years and his business failed only because of Hyundai's unexpected halt to its orders for metal as explained above, which left the Debtor with the debt secured by his properties which had been incurred largely to increase CMI's capacity to be able to service Hyundai's demand.  Without the large orders from Hyundai, the cost of operating CMI's historical recycling business were too high to be offset by income from operations. At this time, however, the Debtor successfully paid off almost 90% of his debts and as retained assets with a value of approximately $24 Million with current debts of only about $8 Million, leaving an equity cushion of $16 Million.  Thus, the Debtor does appear to be eminently qualified for such straightforward business model.

4. Affiliation of persons listed above to Debtor: Jong Uk Byun is the Debtor.

5. Job description: Manager and Landlord

E. **PROPOSED ☒ DISBURSING AGENT ☐ MULTI-PURPOSE POST-CONFIRMATION AGENT**
will pay all amounts due under the Plan from a fund hereby authorized to be opened.  This fund shall be maintained in a segregated, interest-bearing account in a depository approved by the United States trustee for the Central District of California for deposits of funds by trustees.

1. Name of person responsible for collecting money intended for distribution to claimants and transmitting it to claimants: Jong Uk Byun*

2. Disbursing agent's address: 2203 Alameda Street, Los Angeles, CA 90058

3. Disbursing agent's phone number: May Be Provided by Request to Debtor's Attorney.

4. Proposed compensation for person listed above: $0.

5. Qualifications of person listed above: Plan Proponent will serve as the Disbursing Agent.  As explained above, in light of the Debtor's history operating businesses, he is eminently qualified to manage the rental of his properties, sale of some of his properties or refinancing and payment of his obligations under his Chapter 11 Plan.

6. Affiliation of person listed above to Debtor: The Debtor, the Plan Proponent, is also the Disbursing Agent.

7. Job description: Manager and Operator

**The Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall serve without bond and shall not receive compensation or reimbursement for services and expenses rendered and incurred in connection with making distributions under the Plan.**

## IV.    DEFINITIONS AND PRELIMINARY INFORMATION

### A.  CLAIMS AND INTERESTS

A claim refers to all obligations of the Debtor or against property of the Debtor.  Claims treated under the Plan are included whether the claim arose before or after the bankruptcy case was filed, and whether or not an obligation involves a cash payment.  A claimant refers to holder of a claim treated under the Plan, even if the party did not file a proof of claim.  An interest represents an ownership stake in the Debtor.  An interest holder refers to holder of an interest treated under the Plan, even if the party did not file a proof of interest.

A claim or interest is allowed if it is (a) timely and properly scheduled or filed, and not objected to; (b) objected to, and was resolved by settlement of the parties or a court order, or (c) deemed allowed.  A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated.  An interest is deemed allowed if it is included on the list of equity security holders filed by the Debtor with the court and is not scheduled as disputed. **Allowed claims and interests are provided for in the Plan in the relevant category or class.**

A claim or interest is disallowed if it was timely objected to by a party in interest and the court ordered that the claim or interest be disallowed in part or entirely. **Disallowed claims and interests are not treated under the Plan.**

A claim or interest is disputed if a ruling on allowance has not been made, and (a) a proof of claim or interest has been filed or deemed filed and a party in interest has filed an objection; or (b) a proof of claim or interest has not been filed and the Debtor scheduled such claim or interest as disputed, contingent, unliquidated or unknown.

In this case, the deadline by which to file a proof of claim or interest is **September 8, 2023** ("Bar Date") and the deadline by which to have an objection to claim or interest heard is **January 31, 2024**.  The status of the claims and interest objection process is that ☐ all objections to have been resolved, and no other objections are anticipated; or ☒ the objection process is pending, or will shortly begin, for the claims or interests identified in Exhibit B as having an objection pending and Proponent has filed the Motion for Order Approving Disclosure Statement with objections still pending because the Bar Date had not expired by the time this disclosure statement had to be filed and because counsel anticipates rulings on or negotiating resolutions of such objections on time to obtain approval of a disclosure statement.

If the holder of a claim or interest wants to vote, but holds a claim or interest that has either (a) been objected to, or (b) has been scheduled by the Debtor as contingent, disputed, unliquidated, or unknown, and the holder has not filed a proof of claim or interest, the holder must file a motion to have its claim or interest allowed for voting purposes in time for that motion to be heard before the hearing on confirmation of the Plan.

No distribution will be made on the disputed portion of a claim or interest unless allowed by a final non-appealable order.  FRBP 9019 authorizes the Debtor to settle disputed claims with court approval; but court approval is not required if a proposed settlement does not exceed $2,500.00.  The Debtor is required to reserve funds to pay the amount claimants would receive if the claim is allowed in full (unless the court approves a different amount).  To the extent a disputed claim is disallowed, (a) the funds that had been reserved for such claims will be distributed as provided in the Plan to other creditors of the same class (or as ordered by the court); or (b) if this box is checked ☒ then such funds will be distributed to the Debtor.

### B.  POTENTIAL § 1111(b) ELECTIONS.  § 1111(b) allows a partially secured claim to be treated as fully secured under certain conditions, notwithstanding § 506(a).  Claimants should consult their attorney to evaluate if a § 1111(b) election is available and is in their best interest, and to identify the deadline for making an election.

### C.  VOTING AND OBJECTIONS TO CONFIRMATION OF PLAN.

"Voting" to accept or reject the Plan is different from "objecting" to confirmation of the Plan.  Voting by ballot means a claimant entitled to vote completes the ballot enclosed with this DS and Plan and returns it to Proponent.  Objecting to confirmation means a party in interest files and serves either a Preliminary Objection to Confirmation of Plan, or an Opposition to Motion to Confirm Plan.

1. **Who may object to confirmation of the Plan**. Any party in interest may object to confirmation of the Plan; but, as explained below, not all claimants and interest holders are entitled to vote to accept or reject the Plan.

2. **Who may vote** (§ 1124). It requires both an allowed and impaired claim, or allowed and impaired interest in order to vote either to accept or reject the Plan.

   Impaired claimants include those whose legal, equitable, and contractual rights are altered by the Plan even if the alteration is beneficial to the claimant. Impaired interest-holders include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the interest holder.

   Claims and interests are placed into classes consistent with § 1122. Members of unimpaired classes do not vote, though they may file an objection to confirmation of the plan.

   Many claimants are treated by the Bankruptcy Code as having accepted or rejected the Plan without a vote. Some types of claims are required to be treated a certain way by the Bankruptcy Code and for that reason they are considered unimpaired. Holders of such claims cannot vote. In addition, the Bankruptcy Code treats some claimants as having rejected the Plan without a vote if (a) the claimant is to receive no distribution under the Plan; (b) an objection has been filed to that claimants' claim and the objection has not been resolved prior to filing the Plan; or (c) Debtor scheduled a claim as contingent, disputed, unliquidated or unknown and the creditor has not filed a proof of claim.

| Classes Entitled to Vote Because the Class is Impaired: | Classes Not Entitled to Vote Because the Class is Unimpaired: |
|---|---|
| **Except for Classes 1 and 2a and priority claims under § 507(a)(8) and § 1129(a)(9)(C) , ALL Classes Are Impaired and Entitled to Vote.** | None. |

   A party that disputes the Proponent's characterization of its claim or interest as unimpaired and wants to vote, may request a finding of impairment from the Court in order to obtain the right to vote.

3. **Votes necessary to confirm the Plan.**. The court may confirm the Plan if at least one non-insider impaired class of claims has accepted, and certain statutory requirements are met as to both nonconsenting members within a consenting class and as to dissenting classes. A class of claim has accepted the Plan when more than one half in number and at least two-thirds in amount of the allowed claims actually voting, vote in favor of the Plan. A class of interest has accepted when more than one half in number and at least two-thirds in amount of the allowed interests of such class actually voting have accepted it. It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate. That is the subject of any upcoming confirmation hearing.

   (A) **How to vote**. The Debtor will file and serve 2 notices: (1) Notice of Hearing on Adequacy of Disclosure Statement ("**Notice of DS Hearing**"); and Notice of Dates Related to Confirmation of Plan and Deadlines to: Submit Ballot; (B) File Preliminary Objection to Confirmation of Plan; and (C) File Response to Motion to Confirm Plan ("**Notice of Deadlines Related to Confirmation**").

   A ballot will accompany the Notice of Deadlines Related to Confirmation. A voting claimant must follow the instructions set forth in the Notice of Deadlines Related to Confirmation. A claimant whose claim is allowed as partly secured and partly unsecured is entitled to vote in each capacity by delivering one ballot for the secured part of the claim and another ballot for the unsecured portion of the claim.

## V. SOURCE OF MONEY TO SATISFY CLAIMS AND INTERESTS

The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that the Proponent has timely submitted evidence establishing that the Debtor will have sufficient funds available to satisfy all expenses, including the scheduled payments to claimants discussed in sections VIII below.

A. **NON-INCOME SOURCES TO FUND PLAN**.  See Exhibit(s) D for income that will fund the Plan.  If additional funding sources (non-income) are needed, see below:

    1.  Loan or Line of Credit: ☐ None   ☒ Loans or Lines of Credit are as follows:

| | NAME OF LENDER | CONTRIBUTION TYPE | TERM | INT RATE | PROCEEDS |
|---|---|---|---|---|---|
| (a) | **The Debtor continues to seek financing and may amend this Disclosure Statement to reflect relevant information.** | ☒ Loan ☐ Credit Line | | % | Approximately $8 Million Less Cash on Hand |
| (b) | | ☐ Loan ☐ Credit Line | | % | $ |

    2.  Sales of Property:

        ☐ None  - Because of the potential significant ordinary and/or capital gain tax consequences of a sale and the limitations imposed by costs to remediate environmental issues, the Debtor does not currently have a purchase transaction in place, but reserves the right to sell some or all of his real property in the future to pay claims sooner.

        ☐ All or substantially all of Debtor's assets will be sold. The terms of the proposed sale and evidence of the financial solvency of the proposed buyer is attached in Exhibit        .

        ☒ The specified property of Debtor is planned to be sold as follows:

| PROPERTY DESCRIPTION: | PROPOSED SALE DATE | PROPOSED SALE PRICE | PROCEEDS TO FUND THE PLAN |
|---|---|---|---|
| (a) ☒ Property in CLASS #3, #4 or #5: **Check only ONE:** ☛<br>  ☐ 3a ☐ 3b ☐ 3c ☐ 3d ☐ 3e<br>  ☒ 4a ☒ 4b ☒ 4c ☒ 4d ☒ 4e ☒ 4f<br>  ☐ 5a ☐ 5b ☐ 5c ☐ 5d ☐ 5e | Within 12 Months of Effective Date | $11-13 Million | All Net Proceeds |
| (b) ☐ Property in CLASS #3 or #4: **Check only ONE:**<br>  ☐ 3a ☐ 3b ☐ 3c ☐ 3d ☐ 3e<br>  ☐ 4a ☐ 4b ☐ 4c ☐ 4d ☐ 4e<br>  ☐ 5a ☐ 5b ☐ 5c ☐ 5d ☐ 5e | | $ | $ |

☛ Most claims in Class #4 are cross-collateralized against all of the Debtor's Los Angeles real estate. Therefore, the Debtor is retaining a loan broker to arrange a loan secured by his real estate assets valued at about $24 million in an amount sufficient to pay off all of his debts, which appear to be less than about $8 Million. Simultaneously, he is also listing two of his real estate assets for sale, parcels commonly known as (1) 2245 Alameda Street, Los Angeles, CA (APN 5167-015-063) with an appraised value of $4,990,000 and (2) 1736 E. 24th Street, Los Angeles, CA (APN 5167-015-067) with an appraised value of $6,010,000. The aggregate proceeds from the sale of the two parcels, net of expenses and capital gains taxes (of about $3.3 Million) plus funds in his bank accounts at the time, should suffice to pay off all his debts. If necessary, he would also sell that parcel used for parking that is commonly known as 1746 East 22nd Street, Los Angeles, CA (APN 5167-015-068) with an appraised value of $650,000. Obtaining a loan may take

approximately three to six months while closing on a sale of the properties would take approximately 12 months.

☐ **See Exhibit** _____ for additional anticipated sales of specific property.

3. **Adversary Proceedings**: ☐ None    ☒ Adversary proceedings are as follows:

| ADVERSARY PROCEEDING DESCRIPTION: FRBP 7001 and LBR 7004-1 require a summons/complaint. | DATE FILED OR TO BE FILED | ADV. PROC. NUMBER | ANTICIPATED RECOVERY |
|---|---|---|---|
| (a) | Jong Uk Byun v. Packo Investments, Inc. | July 2023 | TBD | $500,000 (Est.) |
| (b) | | | | $ |

**B.** **PAYMENTS ON THE EFFECTIVE DATE**. This section demonstrates the Plan is feasible on the Effective Date.

| (1) CLAIMS AND EXPENSES TO BE PAID ON THE EFFECTIVE DATE | AMOUNT |
|---|---|
| Cure Payments: Executory Contracts, Unexpired Leases:  Section VIII.B.2. | $0 |
| Administrative claims + Statutory Costs/Charges:  Section VIII.C.1. +court costs (estimated) | $250 |
| Nominal Unsecured Claims:  Section VIII.E.1. | $0 |
| First Payments:  General Unsecured Claims:  Section VIII.E.2 | $0 |
| Arrearages + First Payments:  Secured Claims:  Sections VIII.F. – VIII.G.. | $44,758.45 |
| TOTAL TO BE PAID ON THE EFFECTIVE DATE: | $45,008.45 |
| **(2) SOURCE OF FUNDS ON THE EFFECTIVE DATE** | |
| Cash on Hand (estimated based on all cash on hand at end of June 2023 plus projected income to be received up to the Effective Date less expenditures): | $883,540 |
| New Value:  ☒ Contributor Name (*identify*): Ex Wife or Adult Chidlren, if needed. | $0 |
| Loan or Line of Credit:  Described above in: ☐ V.A.(1a)    ☐ V.A.(1b) | $0 |
| Sale of Property: Described above in: ☐ V.A.(2a)    ☐ V.A.(2b) | $0 |
| Adversary Proceeding Recovery: Described above in: ☐ V.A.(3a)    ☐ V.A.(3b) | $0 |
| Other Sources: ☐ (*identify*): | $0 |
| TOTAL FUNDS AVAILABLE ON THE EFFECTIVE DATE: | $883,540.00 |
| **(3) CASH AVAILABLE AFTER PAYMENTS MADE ON THE EFFECTIVE DATE:** | $838,531.55 |

**C.** **PAYMENTS DURING THE PLAN TERM**. Please see **Exhibit D**. for cash flow projections for the duration of the Plan, to help determine that the plan is feasible during the plan term.  The focus is on projected cash receipts and cash disbursements.  All non-cash items such as depreciation, amortization, gains and losses are omitted.  A positive number reflects a source of cash; a (negative number) reflects a use of cash.  **Exhibit D** also contains details of the assumptions that underlie the projections.

**D.** **FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE**
Please see Exhibit **E** for three types of financial documents related to past activities.  Given the short timeframe of the Plan and the reliance on refinancing or sales for funding, only the most recent monthly financial statements are included and documents evidencing amounts on hand after depositing the June rents.

E. **EXPLANATION OF RISK FACTORS AND POTENTIAL FLUCTUATIONS WHEN IMPLEMENTING THE PLAN**.

| RISK FACTOR | EXPLANATION OF RISK AND FLUCTUATIONS |
|---|---|
| ☒ Business/Economic<br>☐ Sale of Property<br>☐ Balloon Payment<br>☐ Int. Rate Adjustment<br>☐ Other | It is difficult to speculate on all circumstances that may exist which may prevent the successful consummation of the proposed plan. However, completion of the Plan depends on the Debtor's continued business operations and the income generated from renting his real estate assets. Nevertheless, the debtor already has enough money to make his first plan payments. |
| ☐ Business/Economic<br>☐ Sale of Property<br>☒ Balloon Payment<br>☐ Int. Rate Adjustment<br>☐ Other | The Debtor anticipates making balloon payments to holders of claims secured by his real estate assets as he continues to be engaged in seeking refinancing proposals for the existing debt and will list three of his properties with value of over $11 Million for sale. |
| ☐ Business/Economic<br>☒ Sale of Property<br>☐ Balloon Payment<br>☐ Int. Rate Adjustment<br>☐ Other | Another risk is the ability of the debtor to secure financing or sell two of his parcels, which are highly coveted, and a third one, if necessary. Environmental contamination issues for purchasers of the properties for sale are minimal. To the extent that the Debtor will fund his plan through the sale of two or three parcels, the risk of not obtaining financing is ameliorated by his commitment to sell such properties, as he did on December 31, 2021 with respect to his largest commercial property at the time. |

F. **TAX CONSEQUENCES OF THE PLAN.**

1. <u>To the Debtor</u>**:**  Tax consequences to the Debtor are:
    The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.
    The following are the tax consequences which the Plan will have on the Debtor's tax liability:  In general, absent an exception, a debtor will realize and recognize cancellation of debt income ("COD Income") upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. The amount of COD Income, in general, is the excess of (a) the adjusted issue price of the indebtedness satisfied, over (b) the sum of (x) the amount of Cash paid, and (y) the fair market value of any new consideration (including stock of the debtor) given in satisfaction of such indebtedness at the time of the exchange.
    A debtor will not, however, be required to include any amount of COD Income in gross income if the debtor is under the jurisdiction of a court in a case under chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that proceeding. Instead, as a consequence of such exclusion, a debtor must reduce its tax attributes by the amount of COD Income that it excluded from gross income under section 108 of the Internal Revenue Code. In general, tax attributes will be reduced in the following order: (a) NOLs; (b) most tax credits and capital loss carryovers; (c) tax basis in assets; and (d) foreign tax credits. A debtor with COD Income may elect first to reduce the basis of its depreciable assets under section 108(b)(5) of the Internal Revenue Code.

2. <u>To Claimants</u>:  Claimants should consult their advisors regarding potential tax effects of the Plan; nevertheless:

    ☐ The Debtor believes tax consequences to claimants are:

☒ The Debtor is not certain of tax consequences, because: Tax consequences may vary from claimant to claimant. Creditors and parties in interest concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors. The Debtor CANNOT and DOES NOT represent that the tax consequences contained above are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action. Additionally, the Debtor is not apprised of all possible claimants' tax situations.

## VI.    ASSETS AND LIABILITIES OF THE ESTATE

A. <u>ASSETS</u>   The identity and fair market value of the estate's assets are listed in **Exhibit C** so that the reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the overall worth of the bankruptcy estate. Any proposed sale of these assets is discussed in Section **V.A.2** above.

B. <u>LIABILITIES</u>   Exhibit **B** shows the allowed claims against the estate, claims whose treatment is explained in detail in Sections VIII below.

C. <u>SUMMARY</u>   The fair market value of all assets equals $22,564,207; however, the appraised value of four contiguous Los Angeles properties if sold together is **$23,770,000**. The contiguous properties are: (1) 2245 Alameda Street, APN 5167-015-063; (2) 2203 Alameda Street, APN 5167-015-064; (3) 2203 Alameda Street, APN 5167-0105-065; and (4) 1736 E. 24th Street, APN 5167-015-067 (hereinafter, the "Contiguous Properties"). The Debtor has received interest in selling properties (1) and (4) separately from the 2203 Alameda Street parcels.

Total liabilities equal $7,462,928.46, but the amount of the administrative claims may continue to increase. Note that these amounts may change as additional proofs of claim are filed. The Debtor already obtained full appraisals of all his Los Angeles properties. In addition, the amount of liabilities would increase when the Los Angeles real properties are sold as capital gains of approximately $3,300,000 or less may be incurred, depending on the basis the Debtor is permitted to claim.

## VII.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS

The Plan must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead. In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee. Unsecured claims generally share in the proceeds of sale only after secured creditors and administrative claimants are paid. Certain unsecured claims get paid before other unsecured claims do. Unsecured claims with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A claimant would recover from the assets of the bankruptcy estate less under chapter 7 than under chapter 11 for a number of reasons including: **(1) in a sale transaction, a chapter 7 trustee would have to pay capital gains taxes to the Internal Revenue Service and the State of California; (2) in a chapter 7 case, a trustee is appointed and is entitled to compensation from the bankruptcy estate as reflected in the chart below; and (3) Chapter 7 Trustees usually employ professionals, such as accountants and lawyers, to help them to carry out their tasks; such professionals are likely to incur tens if not hundreds of thousands of dollars in fees and costs, which, together with the Chapter 7 Trustee's compensation, is likely to dwarf the fees and costs of the Debtor's professionals. The following calculation reflects the scenario in which the Debtor retains all his real estate properties while the next calculation reflects the scenario in which he does not retain any of his Los Angeles properties.**

| CALCULATION OF ESTIMATED PERCENT RECOVERY | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| (a)   <u>Total value of the Debtor's assets (Estimate)</u>:<br>See Exhibits <u>A and C</u> for a list of all property of the bankruptcy estate, valuations, and valuation methods. Assumes disaggregated sales. | $22,564,207.00 | $22,564,207.00 |
| (b)   <u>Administrative Expense Claims (Estimate)</u> – Chapter 7 administrative expense claims would include both Chapter 11 claims and Chapter 7 claims: Debtor estimates $500,000 for Chapter 7 administrative claims. | <$2,305,136.56> | <$200,000> |

| (c) | Tax Claims (Estimate): | <$3,134,690.89> | <$3,134,690,89> |
|---|---|---|---|
| (d) | *Secured Claims to be Paid Before General Unsecured Claims:* | <$3,588,264.47> | <$3,588,264.47> |
| (e) | Trustee's Fees:  Assuming the chapter 7 trustee disburses the net liquidation value of assets to claimants, § 326 indicates the chapter 7 trustee is entitled to fees of:<br><br>  * 25% on the first $5,000 of all moneys disbursed = $1,250,<br>  * 10% on any amount over $5,000 but less than $50,000 = $4,500,<br>  * 5% on any amount over $50,000 but not in excess of $1 million = $47,500,<br>  * 3% on all amounts over $1 million) = $646,022.11<br><br>**TOTAL TRUSTEE'S FEES =** | <$646,022.11> | N/A |
| (f) | New Value (the Debtor currently plans to pay 100% of his claims with interest at the federal post-judgment interest rate, but reserves the right to accept a new value contribution, if necessary) | N/A | $N/A |
| (g) | Dollar Amount Available for General Unsecured Claims:  (a) plus (f) minus (b), (c), (d) and (e) = | $12,890,092.97 | $15,641,251.64 |
| (h) | Dollar Amount of General Unsecured Claims: = | $1,277,074.52 | $1,346,291.96 |
| (i) | **% recovery on general unsecured claims:** [(g) divided by (h)] x 100% = Claims cannot recover more than their total except for post-judgment interest | 100-105.42% | 105.42% |

## VIII. PLAN PROVISIONS: TREATMENT OF CLAIMS

Below is a summary of who gets paid what and when and from what source.  The Proponent is usually not required by law to pay the holder of an unsecured claim or interest everything it would otherwise be entitled to, had a bankruptcy case not commenced.

### A. ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. [§ 365]

1. ☐  There are no executory contracts or unexpired leases.

2. ☒  **Assumption**. The post-confirmation debtor will perform all related obligations whether arising before or after confirmation of the Plan.  Any arrearages arising before confirmation of the Plan will be paid by the first day of the month following the Effective Date unless the parties agree otherwise or the court finds that a longer payment schedule still provides the creditor with timely cure and adequate assurance of future performance.  Obligations that arise after confirmation of the Plan will be paid as they come due.

☐ Previously Assumed:

| DESCRIPTION OF EXECUTORY CONTRACT OR UNEXPIRED LEASE | DATE OF ORDER TO ASSUME | CURE AMOUNT: Must be paid on Effective Date |
|---|---|---|
| (a) | | $ |
| (b) | | $ |

☒ **To be Assumed on the Effective Date**.

| DESCRIPTION OF EXECUTORY CONTRACT OR UNEXPIRED LEASE | CURE AMOUNT: Must be paid on Effective Date |
|---|---|

| (a) | See List of Leases Attached as part of Exhibit G | $0 |
|---|---|---|

3. ☐ **Rejection**. Claims arising from the rejection of an executory contract or unexpired lease are treated as general unsecured claims in CLASS #2, except to the extent the court orders otherwise. A claim arising from the rejection must be filed no later than 30 days after the date of the order confirming the Plan.

| DESCRIPTION OF EXECUTORY CONTRACT OR UNEXPIRED LEASE | |
|---|---|
| (a) | None | ☐ Rejected: ☐ Order Entered on: <br> ☐ Deemed Rejected on: <br> ☐ To be Rejected on the Effective Date |
| (b) | | ☐ Rejected: ☐ Order Entered on: <br> ☐ Deemed Rejected on: <br> ☐ To be Rejected on the Effective Date |

☒ **See Exhibit** G for additional executory contracts and unexpired leases to be assumed or rejected.

B. **UNSECURED CLAIMS THAT MUST BE TREATED AS REQUIRED BY § 1129(a)(9)(A) and § 1129(a)(9)(C), UNLESS A CLAIMANT CONSENTS TO A DIFFERENT TREATMENT.** §§ 1129(a)(9)(A) and (C) require that certain claims be treated one at a time, rather than as a class. Even if another claimant votes to accept a lesser treatment, the claims listed below are not altered. The debtor must prove to the court that claims are either being treated as 1129(a)(9) requires, or that the claimant agreed to some other treatment.

1. **Administrative Expense Claims** - § 507(a)(2) & § 1129(a)(9)(A). These include: (1) court-approved claims of attorneys and other professionals; and (2) United States trustee fees under 28 U.S.C. chapter 123.

☐ The deadline to file administrative expensive claims is (date) _____.

☐ There are no administrative expense claims.

☒ All administrative expense claims ☐ have been filed and/or ☒ are anticipated to be filed, and the claims and amounts indicated below are the amounts requested or anticipated to be requested:

| Claimant: U.S. Trustee* | | | | | | |
|---|---|---|---|---|---|---|
| Claim Amount (less paid to date) <br> ☐ Actual <br> ☒ Estimated | Interest Rate (if any) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| $4,875.00 | N/A | $250 | ☐ Monthly <br> ☒ Quarterly | Unknown | None | N/A |

\* U.S. trustee quarterly fees shall be paid until a final decree is entered or the case is dismissed or converted. Fees of the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

| Claimant: The Orantes Law Firm, P.C. | | | | | | |
|---|---|---|---|---|---|---|
| Claim Amount (less paid to date) <br> ☐ Actual <br> ☒ Estimated | Interest Rate (if any) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| $ 120,000 | N/A | To Be Negotiated | ☒ Monthly <br> ☐ Quarterly | Debtor and Counsel will negotiate payment terms for fees. | | |

| Claimant: Loan Broker | | | | | | |
|---|---|---|---|---|---|---|
| Claim Amount (less paid to date) ☐ Actual ☒ Estimated | Interest Rate (if any) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| TBD | N/A | 0 | ☐ Monthly ☐ Quarterly | To be paid as approved by Court per employment application. | | |

| Claimant: Environmental Consultant | | | | | | |
|---|---|---|---|---|---|---|
| Claim Amount (less paid to date) ☐ Actual ☒ Estimated | Interest Rate (if any) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| TBD | N/A | To Be Negotiated | ☐ Monthly ☐ Quarterly | To be paid as approved by Court, if a consultant is necessary. | | |

2. **Tax Claims - § 507(a)(8) and § 1129(a)(9)(C).** Must be paid in full within 5 years after the Petition Date.

☐ There are no tax claims      ☒ All tax claims have been filed or scheduled, and are indicated below:

> **ONLY PARTIES HOLDING UNSECURED PRIORITY CLAIMS (I.E., SCHEDULE E) WHO ARE OWED ANY AMOUNTS ARE LISTED HERE. SCHEDULED CLAIMANTS WHO ARE OWED $0 AND WILL, THEREFORE, RECEIVE $0 ARE LISTED IN EXHIBIT B. PLEASE REFER TO SUCH EXHIBIT FOR DETAILS REGARDING YOUR CLAIM, IF ANY.**

| Claimant: San Bernardino County Tax Collector – See Classes 4e and 2b for treatment. | | | | | | |
|---|---|---|---|---|---|---|
| Claim Amount (less paid to date) ☒ Actual ☐ Estimated | Interest Rate (§511) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| See Classes 4e and 2b | 18% | NA | ☒ Monthly ☐ Quarterly | NAp | NA | See Classes 4e and 2b for terms.. |

| Claimant: Franchise Tax Board | | | | | | |
|---|---|---|---|---|---|---|
| Claim Amount (less paid to date) ☐ Actual ☒ Estimated | Interest Rate (§511) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| $989,326 | 7% | $5,771.07 | ☒ Monthly ☐ Quarterly | $5,771.07 | $989,326 | Payable 12 months from Effective Date with interest payments in prior months for no more than 12 months. |
| | | | | | For Notice purposes only | |

☒ **See Exhibit H** for additional unsecured claims (not listed in VII.C) on which voting is not allowed.

☐ **§ 507(a)(2)** – Administrative Expense Claims
☒ **§ 507(a)(8)** – Tax Claims
☐ **§ 507(a)(3)** – Involuntary Gap Claims Allowed Under § 502(f)

C.  **UNSECURED CLAIMS THAT MUST BE TREATED AS REQUIRED BY § 1129(a)(9)(B) – CLASS #1.**
§ 1129(a)(9)(B) requires certain unsecured claims to be treated with priority over general unsecured claims, and pay them in full on the Effective Date or as soon as practicable after unless claimants vote as a class to accept deferred payments.  If so, claims are impaired and claimants are entitled to vote to accept or reject the Plan.

☒  There are no claims in CLASS #1.

☐  **CLASS #1a:** § 507(a)(1) - Wage and Commission Claims

| Claimant: | | | | | | |
|---|---|---|---|---|---|---|
| **Claim Amount**<br>(less paid to date)<br>☐ Actual<br>☐ Estimated | **Interest Rate**<br>(if any) | **Amount Paid on Effective Date** | **Amount Paid After Effective Date** | | | |
| | | | **Frequency** | **Each Payment** | **Balloon Pymts** | **Term of Payments** |
| $ | % | $ | ☐ Monthly<br>☐ Quarterly | $ | $ | months |

☐  **See Exhibit** _____ for additional unsecured claims (not listed above) in Class #1:

    ☐  **CLASS #1(a):** § 507(a)(4) - Wage and Commission Claims
    ☐  **CLASS #1(b):** § 507(a)(5) – Employee Benefit Plan Contribution Claims
    ☐  **CLASS #1(c):** § 507(a)(6) – Grain Producer and Fisherman Claims
    ☐  **CLASS #1(d):** § 507(a)(7) – Consumer Deposit Claims

D.  **OTHER UNSECURED CLAIMS – CLASS #2.**

☐  There are no claims in **CLASS #2.**

☒  See Exhibit B for a list of all **CLASS #2** claimants and amount owed to each.

1.  ☒  **CLASS #2a:  Nominal Unsecured Claims.**  These include "nominal" claims of $500 or less, and any larger unsecured claims whose claimant agreed to reduce its claim to this amount.  Claimants are **not entitled to vote** to accept or reject the Plan.

    Claimants will be paid the nominal amount on the Effective Date, or as soon as practicable thereafter.  Estimated total payments are Not known at this time as there are no small claims and claimants may nevertheless elect to receive $500 in conjunction with voting.

2.  ☒  **CLASS #2b:  General unsecured claims.**  These are unsecured claims not included in **CLASS #2a**, and will be paid as follows.  Claimants are **entitled to vote** to reject or accept the Plan.

    ☒  Percent Plan.  Each claimant in CLASS #2b will be paid up to 100% of its claim beginning no later than 12 months after the Effective Date (in conjunction with closing of refinancing or the sale of the properties the Debtor proposes to sell under this Plan).

        a.  ~~Over 30 years in equal ☐ monthly ☐ quarterly installments, due on the first day of each calendar quarter~~

        b.  ☒ with interest at the rate of 5.42% Federal Post-Judgment Interest Rate per annum, or ☐ without interest; and.

        c.  The amount each claimant receives depends on the total amount of allowed claims in this class.

    ☐  Pot Plan.

        a.  Pro rata means the entire fund amount divided by the total of all allowed claims in this class.

        b.  Payment amount is $See Alternative Exhibit B per ☐ month ☐ quarter for a period of NA months/quarters,

     c.   Payments will begin on (*date*): <u>Effective Date</u>

     ☐ <u>Other</u>: **See Exhibit _____**

E.  <u>SECURED CLAIMS</u> – CLASS #3, CLASS #4 and Class #5.

    <u>**CLASS #3 - Unimpaired Non-Insider Claims**</u>. Claimants **are not entitled** to vote to accept or reject the Plan.  Until claims are fully paid, claimants retain their interest in the property securing the claim.  Treatment is:

☒ There are no claims in CLASS #3.

| ☐ CLASS #3a | Claimant: |
| --- | --- |
| | Basis for secured status: |
| | Priority of lien: |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
| --- | --- | --- | --- | --- | --- | --- | --- |
| $ | $ | % | | $ | | $ | |

| Address or Other Description of Collateral Securing Claim 3a: | | |
| --- | --- | --- |
| Value:<br>$ | Valuation Method | ☐ Order on motion or stipulation ☐ Declaration: Certified appraiser<br>☐ Other: |

☐ Additional Comments relating to Class #3a:

| ☐ CLASS #3b | Claimant: |
| --- | --- |
| | Basis for secured status: |
| | Priority of lien: |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
| --- | --- | --- | --- | --- | --- | --- | --- |
| $ | $ | % | | $ | | $ | |

| Address or Other Description of Collateral Securing Claim 3b: | | |
| --- | --- | --- |
| Value:<br>$ | Valuation Method | ☐ Order on motion or stipulation ☐ Declaration: Certified appraiser<br>☐ Other: |

☐ Additional Comments relating to Class #3b:

| ☐ CLASS #3c | Claimant: |
| | Basis for secured status: |
| | Priority of lien: |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $ | $ | % | | $ | | $ | |

| Address or Other Description of Collateral Securing Claim 3c: | | |
|---|---|---|
| Value: $ | Valuation Method | ☐ Order on motion or stipulation ☐ Declaration: Certified appraiser ☐ Other: |

☐ Additional Comments relating to Class #3c:

☐ **See Exhibit** ____ for more unimpaired secured claims. Label as Class #3d, #3e, etc.

**CLASS #4 - Impaired Non-Insider Claims**. Claimants **are entitled** to vote to accept or reject the Plan.  Until claims are fully paid, claimants retain their interest in the property securing the claim.  Treatment is:

☐ There are no claims in CLASS #4.

ONLY PARTIES HOLDING SECURED CLAIMS (I.E., SCHEDULE D) WHO ARE OWED ANY AMOUNTS ARE LISTED HERE. SCHEDULED CLAIMANTS WHO ARE OWED $0 AND WILL, THEREFORE, RECEIVE $0 ARE LISTED IN EXHIBIT B. PLEASE REFER TO SUCH EXHIBIT FOR DETAILS REGARDING YOUR CLAIM, IF ANY.

| ☒ CLASS #4a | **Claimant:** Bae Family Trust (Packo Investments, Inc., as assignee) |
| | **Basis for secured status:**  Deeds of Trust |
| | **Priority of lien: 1st as consensual lien** |
| | ☐ Lien is not modified in any way. |
| | ☒ Lien is modified as follows: It is deemed reconveyed upon full payment under this Plan. Holder must record a reconveyance as required by applicable law upon payment under this Plan, which shall constitute full satisfaction of such lien. |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $2,095,110.53 | $2,304,621.58 | 10% | Effective Date | $17,459.25 with balloon of $2,095,110.53 | Monthly with balloon payment no later than 12 months after Effective Date | 12 | 12 Months from Effective Date |

| **Address or Other Description of Collateral Securing Claim 4a:** Los Angeles, California properties with addresses of (1) 2245 Alameda Street, APN 5167-015-063; (2) 2203 Alameda Street, APN 5167-015-065; (3) 2203 Alameda Street, APN 5167-0105-065; (4) 1736 E. 24th Street, APN 5167-015-067 and (5) 1746 East 22nd Street (APN 5167-015-068) | | |
|---|---|---|
| **Value:** $24,000,000 | **Valuation Method** | ☐ Order on motion or stipulation ☒ Declaration: Certified appraiser ☒ Other: Debtor as Owner. |

☒ Additional Comments relating to Class #4a:
    **None.**

| ☒ **CLASS #4b** | **Claimant:** Complete Business Solutions Group/Broadway Finance |
|---|---|
| | **Basis for secured status:** Judgment |
| | **Priority of lien:** 6th |
| | ☐ Lien is not modified in any way. |
| | ☒ Lien is modified as follows: It is deemed satisfied upon full payment under this Plan. Holder must record a Satisfaction of Judgment as required by applicable law upon payment under this Plan, which shall constitute full satisfaction of such lien. |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $344,834.96 | $379,318.46 | 10% | Effective Date | $2,873.62 with balloon payment of $344,834.96 | Monthly with balloon payment no later than 12 months after Effective Date | 12 | 12 Months from Effective Date |

| **Address or Other Description of Collateral Securing Claim 4b:** Los Angeles, California properties with addresses of (1) 2245 Alameda Street, APN 5167-015-063; (2) 2203 Alameda Street, APN 5167-015-065; (3) 2203 Alameda Street, APN 5167-0105-065; (4) 1736 E. 24th Street, APN 5167-015-067 and (5) 1746 East 22nd Street (APN 5167-015-068) | | |
|---|---|---|
| **Value:** $24,000,000 | **Valuation Method** | ☐ Order on motion or stipulation ☒ Declaration: Certified appraiser ☒ Other: Debtor as Owner. |

☒ Additional Comments relating to Class #4b:
    **None.**

| ☒ **CLASS #4c** | **Claimant:** Creditors Adjustment Bureau |
|---|---|
| | **Basis for secured status:** Judgment |
| | **Priority of lien:** 1st |

| | |
|---|---|
| | ☐ Lien is not modified in any way. |
| | ☒ Lien is modified as follows: It is deemed satisfied upon full payment under this Plan. Holder must release the lien on this property as required by applicable law upon payment under this Plan, which shall constitute full satisfaction of such lien. |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $271,568.64 | $298,725.50 | 10% | Effective Date | $2,263.07 with balloon payment of $271,568.64 | Monthly with balloon payment no later than 12 months after Effective Date | 12 | 12 Months from Effective Date |

| | | |
|---|---|---|
| **Address or Other Description of Collateral Securing Claim 4c:** The Debtor's Los Angeles, California property with address of 1746 East 22nd Street (APN 5167-015-068) | | |
| **Value:** Up to $650,000 | **Valuation Method** | ☐ Order on motion or stipulation  ☒ Declaration: Certified appraiser  ☒ Other: |

☐ Additional Comments relating to Class #4c: None.

☒ **See Exhibit I** for more impaired secured claims. Label as Class #4d, #4e, etc.

**CLASS #5 - Insider Claims**. These are claims of persons defined in 11 U.S.C. §101(31).  Essentially, an insider is a person with a close relationship with the Debtor other than a creditor-debtor relationship.  Treatment is:

☒ There are no claims in CLASS #5.

| | |
|---|---|
| ☐ **CLASS #5a** | **Claimant:** |
| | **Basis for secured status:** |
| | **Priority of lien:** |
| | ☐ Lien is not modified in any way. |
| | ☐ Lien is modified as follows: |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $ | $ | % | | $ | | $ | |

| Address or Other Description of Collateral Securing Claim 5a: | | |
|---|---|---|
| **Value:** $ | **Valuation Method** | ☐ Order on motion or stipulation ☐ Declaration: Certified appraiser<br>☐ Other: |

☐ Additional Comments relating to Class #5a:

☐ **See Exhibit** _____ for more insider secured claims. Label as Class #5b, #5c, etc.

### F. SHAREHOLDER OR PARTNER INTERESTS

☒ Under the Plan, the Debtor simply retains its property interest in property, both encumbered and exempt.

☐ Shareholders redeem their shares of stock and receive the following consideration:

☐ Partner's interest(s) in partnership Debtor:
1. Each partner's interest in the debtor shall remain as it is now.  The identity of the general partners are:
   . There ☐ are no limited partners
              ☐ are limited partners and their identities are as follows:

2. The interest of ☐ some or ☐ all of the partners changes under the Plan as follows:

☐ The ☐ Articles of Incorporation or ☐ Bylaws have been changed to include a provision prohibiting the issuance of nonvoting equity securities as required by 11 U.S.C. §1123(a)(6).

## IX. UNCLAIMED OR UNDELIVERABLE PLAN DISTRIBUTIONS. Payments or other distributions made under the Plan that are unclaimed or undeliverable for six (6) months after the attempted distribution will revest in the post-confirmation debtor free of restrictions.  Any entitlement to distribution will be barred.

## X. EFFECT OF CONFIRMATION.

### A. General Comments

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the Plan, and any claimant, interest holder, or general partner of the Debtor, even those who do not vote to accept the Plan.

The confirmation of the Plan vests all property of the estate in the Debtor.

The automatic stay is lifted upon confirmation as to property of the estate.  However, the stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not seek a discharge, the discharge is deemed denied and the stay as to the Debtor and the Debtor's property terminates on entry of the order confirming the Plan.

### B. Discharge of Liability for Payment of Debts; Termination of Rights and Interests of Equity Security Holders and General Partners Provided for by the Plan

☒ Debtor will seek an order of discharge pursuant to 11 U.S.C. § 1141(d)(5)(C).

☐ Debtor is not eligible for a discharge pursuant to 11 U.S.C. § 1141(d)(3) because:

☐ the Plan provides for the liquidation of all, or substantially all, of the property of the estate.

☐ the Debtor will not engage in business after consummation of the Plan.

☐ the Debtor would be denied a discharge under 11 U.S.C. § 727(a) if the case were a case under chapter 7.

☐ Debtor is a corporate debtor thus pursuant to 11 U.S.C. §1141(d)(5)-(6), "[t]he confirmation of the plan does not discharge the Debtor from any debt of a kind specified in 11 U.S.C. §523(a)(2)(A)-(B) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of Chapter 37 of title 31 or any similar State statute, or for a tax or customs duty with respect to which the debtor made a fraudulent tax return or willfully attempted in any manner to evade or to defeat such tax or such customs duty."

C. **Modification of the Plan**

The Proponent may modify the Plan pursuant to 11 U.S.C. § 1127.

D. **Final Decree**

Once the Plan has been consummated, a final decree may be entered upon motion of the Proponent. The effect of the final decree is to close the bankruptcy case. After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.

E. **Material Default**

If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default. The Debtors are in Material Default under the Plan if the Debtor fails within 21 days of the service of such notice of default either: (i) to cure the default or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

# XI. LIST OF EXHIBITS AND DECLARATIONS.
## A. MANDATORY

**Exhibit A:**    Declaration of **Jong Uk Byun** to support all assertions in this Disclosure Statement, and all information provided in all other Exhibits.

**Exhibit B:**    List of all claims (*next to each claim, indicate whether or not the claim is disputed and scheduled or unscheduled, and include the class number*).

**Exhibit C:**    List of all property of the estate (including cash on hand) and going concern and liquidation valuations of all listed property as of the date of plan confirmation. Include appendices to describe valuation methods such as order entered determining value, declaration of appraiser with approach used, qualifications as expert, etc. For rental property include average monthly cash flow, deducting for debt service and ordinary, necessary operating expenses for the past three months and the past two years. Estimates of collections and likelihood of collections of accounts receivable and lawsuits should also be provided. See Exhibit F for appraisals.

**Exhibit D:**    Projected income, expenses, and plan payments prepared on (*date*) April 15, 2021, to support that the plan is feasible during the plan term, as referred to in section V.C. Details include proposed plan payments to be made on the Effective Date and for each month and/or quarter of the Plan Term. Sources and uses of funds and any expense fluctuations are explained.

**Exhibit E:**    Financial records:

⊠    Balance sheets, income and expense statements, cash flow statements for the period including the most recent twelve-month calendar year and all months subsequent thereto. Sources and uses of funds and any expense fluctuations are explained.

⊠    Evidence of funds constituting the source of funds on the effective date (i.e., *MOR Summary*)

B. **OPTIONAL**

☒ **Exhibit F**:    Declarations:    ☒ Certified Appraisers

☐ Contributor of New Value (regarding ability to provide funding)

☐ Other:

☒ **Exhibit G**:    Other Exhibits:    List of Leases with lease amounts.

C. **ADDITIONAL CLAIMS THAT ARE UNABLE TO BE IDENTIFIED IN SECTIONS VIII.A – VIII.F.**

☒ **Exhibit H**: Additional Claim(s), Sec. ☐ VIII.A    ☒ VIII.B    ☐ VIII.C    ☐ VIII.D    ☐ VIII.E    ☐ VIII.F

☒ **Exhibit I**: Additional Claim(s), Sec. ☐ VIII.A    ☐ VIII.B    ☐ VIII.C    ☐ VIII.D    ☒ VIII.E    ☐ VIII.F

☐ **Exhibit J**: Additional Claim(s), Sec. ☐ VIII.A    ☐ VIII.B    ☐ VIII.C    ☐ VIII.D    ☐ VIII.E    ☐ VIII.F

☐ **Exhibit K**: Additional Claim(s), Sec. ☐ VIII.A    ☐ VIII.B    ☐ VIII.C    ☐ VIII.D    ☐ VIII.E    ☐ VIII.F

☐ **Exhibit L**: Additional Claim(s), Sec. ☐ VIII.A    ☐ VIII.B    ☐ VIII.C    ☐ VIII.D    ☐ VIII.E    ☐ VIII.F

Date: 4/15/21                                   /s/ Giovanni Orantes
                                                Signature of attorney for proponent


                                                Giovanni Orantes
                                                Printed name of attorney for proponent

Exhibit "A"

### EXHIBIT A - DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN

1.  I, Jong Uk Byun have personal knowledge of the facts set forth in this declaration.

2.  The name of the individual(s) who prepared this Disclosure Statement and Plan is(are) Giovanni Orantes.

3.  The source of all financial data is my books and records.

4.  All facts and representations in the Disclosure Statement and Plan are true to the best of my knowledge.

5.  No fact has been omitted that is material to a claimant or equity security holder in voting to accept or reject the proposed Plan.

6.  The name of the person who prepared the cash flow projections and the other financial documents are Jason Pak and Giovanni Orantes for projections, and such persons acting under the direction of the Debtor (or Proponent).  Hyung Jin Park prepared the historical information from information I provided to him, but he did not audit such information, and therefore, he does not guarantee its accuracy.

7.  The accounting method(s) used to prepare the cash flow projections and other financial documents is(are) cash method.

8.  Attached as part of Exhibit C to the Disclosure Statement And Plan Of Reorganization filed with the Court is a true and correct copy of the list of my real estate properties. I also attach to Exhibit C a true and correct copy of declarations from appraisers regarding the value of the properties and will file the appraisers in the Bankruptcy case and provide them to any party-in-interest upon request.

9.  I valued assets for which I provide estimated values in the combined Disclosure Statement And Plan Of Reorganization to which this declaration is appended at liquidation.  That is, the price that a willing buyer would pay me for the assets at the time of plan confirmation currently estimated to occur between March and March 2024, except in cases where formal appraisals were secured or Kelly Blue Book or other similarly authoritative source was consulted.  With respect to real property, I am familiar with the values of real assets where my real properties are located and also have contracted licensed real estate appraisers to provide opinions of value regarding my specific real properties, which I believe to be true, and provide values in the combined Disclosure Statement And Plan Of Reorganization on such basis, including based on authenticated formal appraisals of all my real properties located in the County of Los Angeles.  The schedules A/B and C attached as part of Exhibit C to the Disclosure Statement And Plan Of Reorganization are restated to reflect estimated values as of the applicable time.

10.   After paying off the priority claims of taxing authorities within 60 months from the date I commenced my
      Bankruptcy Case, I would dedicate all the money freed up by completing the payments of the priority claims
      of taxing authorities, I would like to pay off the remaining non-priority debts as proposed in my plan.

11.   The foregoing notwithstanding, since the Court may not confirm the installment plan previously described, I
      am also retaining a loan broker to arrange a loan secured by my real estate assets valued at about
      $24 million in an amount sufficient to pay off all of my debts, which I believe are less than about $8 Million.
      Simultaneously, I am also listing two of my real estate assets for sale, parcels commonly known as (1) 2245
      Alameda Street, Los Angeles, CA (APN 5167-015-063) with an appraised value of $4,990,000 and (2) 1736
      E. 24th Street, Los Angeles, CA (APN 5167-015-067) with an appraised value of $6,010,000. The
      aggregate proceeds from the sale of the two parcels, net of expenses and capital gains taxes (of about $3.3
      Million) plus funds in my accounts at the time, should suffice to pay off all my debts. If necessary, I would
      also sell that parcel used for parking that is commonly known as 1746 East 22nd Street, Los Angeles, CA
      (APN 5167-015-068) with an appraised value of $650,000. I am informed and believe that obtaining a loan
      may take approximately three to six months while closing on a sale of the properties would take
      approximately 12 months.


                          [REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

I declare under penalty of perjury under the laws of the United States that the following statements are true and based upon personal knowledge.

Date: 7/10/23

Signature of Declarant

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

February 2019                                             Page 32                              VZ CH11.DISCLSR.PLAN

Exhibit "B"

All Claims (Proposed Effective Date of 3/1/24)

Jong Uk Byun | 2:23-bk-12747-VZ

| Name* | Class | Value of Collateral | Filed Claim | Tentatively Allowed Claim Amount** | Objection/Comment to Filed Proofs of Claims | Monthly Payment Pending Full Payment | Total Payment |
|---|---|---|---|---|---|---|---|
| **ADMINISTRATIVE EXPENSES** | | | | | | | |
| Orantes Law Firm | | | | | To be determined during bankruptcy case | TBD | |
| Office of the United States Trustee | | | | | Usually paid in full in ordinary course of business | TBD | |
| TOTAL | | | | | | | |
| **Schedule D - Secured Claims** | | | | | Amounts may be paid from refinancing or sale proceeds | | |
| Adv. Fin./Grand Pacific | NA | | | $0.00 | Time Share | $0.00 | 0 |
| Allen Park | NA | $0.00 | | $0.00 | This claim was paid off in full from the sale of the 8201 Santa Fe Ave. Huntington Park, CA 90255 property | $0.00 | $0.00 |
| Bae Family Trust (Packo Investments Inc.) | 4a | $24,000,000.00 | 8 | $2,095,110.53 | Interest Only pending refinancing within one year of Effective Date. Debtor may object to claim. Payoff amount per RFS Motion. | $17,459.25 | $2,304,621.58 |
| Bank of America | NA | $0.00 | | $0.00 | | $0.00 | $0.00 |
| BFS West, Inc. | NA | $0.00 | | $0.00 | Only UCC-1 for judgment filed with Secretary of State, not in County records. | $0.00 | $0.00 |
| Complete Business Solutions Group/Broadway Finance | 4b | $24,000,000.00 | 2 | $344,834.96 | Interest Only pending refinancing within one year of Effective Date. Debtor may object to claim. Payoff amount per RFS Motion. | $2,873.62 | $379,318.46 |
| Creditors Adjustment Bureau | 4c | $650,000.00 | 1 | $271,568.64 | Interest Only pending refinancing within one year of Effective Date. Debtor may object to claim. Payoff per Proof of Claim. Collateral value set per Claimant's request. | $2,263.07 | $298,725.50 |
| Hyundai Steel Company | NA | $0.00 | | $0.00 | This claim was paid off in full from the sale of the 8201 Santa Fe Ave. Huntington Park, CA 90255 property | $0.00 | $0.00 |
| Kap Chan Chong | NA | $0.00 | | $0.00 | This claim was paid off in full from the sale of the 8201 Santa Fe Ave. Huntington Park, CA 90255 property | $0.00 | $0.00 |
| Los Angeles County Tax Collector | NA | $0.00 | | $0.00 | Paid off in full in 2022. | $0.00 | $0.00 |
| Los Angeles County Tax Collector | NA | $0.00 | | $0.00 | Proof of claim was withdrawn after Debtor moved for disallowance in previous case. | $0.00 | $0.00 |
| M&A Equities, LLC | NA | $0.00 | | $0.00 | Debtor's objection to this claim was sustained in previous case. | $0.00 | $0.00 |
| Mohamed Sanfaz (Packo Investments Inc.) | 4d | $24,000,000.00 | 9 | $743,291.77 | Interest Only pending refinancing within one year of Effective Date. Debtor may object to claim. Payoff amount per RFS Proof of Claim. | $6,194.10 | $817,620.95 |
| Packo Investments | NA | $0.00 | | $0.00 | This claim was paid off in full from the sale of the 8201 Santa Fe Ave. Huntington Park, CA 90255 property | $0.00 | $0.00 |
| San Bernardino County Tax Collector | 4e | $500,000.00 | 7 | $81,590.14 | **This amount of property taxes is secured. See Class 2b for treatment of the unsecured $7,510.90 portion.** It will receive interest Only pending refinancing within one year of Effective Date. Debtor may object to claim. Total amount to be paid shall be the amount due upon refinancing of sale after calculating interest and other allowed amounts, if any | $1,223.85 | $96,276.37 |
| Select Portfolio Servicing, Inc | NA | $0.00 | | $0.00 | | $0.00 | $0.00 |
| Soo Yeong Kim | NA | $0.00 | | $0.00 | This claim was compromised in full to be able to sell 8201 Santa Fe Ave. Huntington Park, CA 90255 property | $0.00 | $0.00 |
| Southern Counties Oil, Co. | 4f | $24,000,000.00 | | $14,213.24 | Judgment for Goods Sold - 1736 East 24th Street, Los Angeles, CA 90058; 2203 S. Alameda Street, Los Angeles Ca 90058; 2445 S. Alameda Street, CA 90058; 24399 Old Highway 58, Hinkley, CA 92347 | $118.44 | $15,634.56 |
| Toni Ko | NA | $0.00 | | $0.00 | This claim was paid off in full from the sale of the 8201 Santa Fe Ave. Huntington Park, CA 90255 property | $0.00 | $0.00 |

| Name* | Class | Value of Collateral | Filed Claim | Tentatively Allowed Claim Amount** | Objection/Comment to Filed Proofs of Claims | Monthly Payment Pending Full Payment | Total Payment |
|---|---|---|---|---|---|---|---|
| Wells Fargo Bank NA | NA | | | | $0.00 Secured credit card | $0.00 | $0.00 |
| Wells Fargo Dealer Services | NA | | | | $0.00 2017 Honda Ridgeline- paid off | $0.00 | $0.00 |
| Wilshire State Bank/Bank of Hope | NA | $0.00 | | | $0.00 24399 Old Highway 58 Hinkley, CA 92347  paid off | $0.00 | $0.00 |
| Yeon Shim Song | NA | | | | $0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | **$3,550,609.28** | | **$30,132.34** | **$3,912,197.42** |
| **Schedule E - Unsecured Priority Claims** | | | | | Amounts may be paid from refinancing or sale proceeds | **Monthly Amount Payment If payable 5 years from 05/04/23** | |
| Employment Development Department | | | | | $0.00 For Notice Purpose Only | $0.00 | $0.00 |
| Franchise Tax Board | | | 6 | $1,175,829.28 | Interest Only pending refinancing within one year of Effective Date. Debtor may object to claim. Total amount to be paid shall be the amount due upon refinancing of sale after calculating interest and other allowed amounts, if any | $6,859.00 | $1,258,137.33 |
| Internal Revenue Service | | | 4 | $2,134,357.98 | Interest Only pending refinancing within one year of Effective Date. Debtor may object to claim. Total amount to be paid shall be the amount due upon refinancing of sale after calculating interest and other allowed amounts, if any | $12,450.42 | $2,283,763.04 |
| State Board of Equalization | | | | | $0.00 For Notice Purpose Only | $0.00 | $0.00 |
| U.S. Small Business Administration | | | | | $0.00 For Notice Purpose Only (not priority) | $0.00 | $0.00 |
| **TOTAL** | | | | **$3,310,187.26** | | **$19,309.43** | **$3,541,900.37** |
| **Schedule F - General Unsecured Nonpriority Claims** | | | | | Payments will be made with refinancing or sale proceeds | **Paid Upon Closing of Refinancing or Sale** | |
| American Express | 2b | | | $0.00 | | $0.00 | $0.00 |
| Bank of America | 2b | | | $0.00 | | $0.00 | $0.00 |
| Bank of Hope | 2b | $0.00 | | $460,140.29 | Based on judgment and orders re attorneys' fees and costs for litigation. | $485,079.89 | $485,079.89 |
| Bejac | 2b | | | $0.00 | | $0.00 | $0.00 |
| BMW Bank of North America | 2b | | | $0.00 | | $0.00 | $0.00 |
| Bok Sook Byun | 2b | | | $0.00 | | $0.00 | $0.00 |
| California Dept. of Tax and Fee Administration | 2b | | | $0.00 | | $0.00 | $0.00 |
| Capital One | 2b | | | $0.00 | | $0.00 | $0.00 |
| Capital One | 2b | | | $0.00 | | $0.00 | $0.00 |
| Capital One | 2b | | | $0.00 | | $0.00 | $0.00 |
| Capital One | 2b | | | $0.00 | | $0.00 | $0.00 |
| Capital One | 2b | | | $0.00 | | $0.00 | $0.00 |
| Capital One/Saks F | 2b | | | $0.00 | | $0.00 | $0.00 |
| Cemex Construction Materials | 2b | | | $0.00 | | $0.00 | $0.00 |
| City of Los Angeles | 2b | | | $0.00 | | $0.00 | $0.00 |
| Coleman & Horowitt, LLP | 2b | | | $0.00 | | $0.00 | $0.00 |
| CP Construction | 2b | | | $0.00 | | $0.00 | $0.00 |
| Daniel Park | 2b | | | $0.00 | | $0.00 | $0.00 |
| Deutsche Bank National Trust Co. | 2b | | | $221,246.63 | | $233,238.20 | $233,238.20 |
| DLI Assets Bravo, LLC/DL Global, Ltd. | 2b | | 5 | $334,625.78 | The Debtor anticipates objecting to this claim. | $352,762.50 | $352,762.50 |
| DTSC- Site Clean Up Program | 2b | | | $0.00 | | $0.00 | $0.00 |
| Eisner Jaffe | 2b | | | $0.00 | | $0.00 | $0.00 |
| First Premier Bank | 2b | | | $0.00 | | $0.00 | $0.00 |
| First Progress | 2b | | | $0.00 | | $0.00 | $0.00 |
| First Savings Bank/Blaze | 2b | | | $0.00 | | $0.00 | $0.00 |
| Genesis FS Card Services/Quantum3Group LLC | 2b | | | $6,465.00 | | $6,815.40 | $6,815.40 |

| Name* | Class | Value of Collateral | Filed Claim | Tentatively Allowed Claim Amount** | Objection/Comment to Filed Proofs of Claims | Monthly Payment Pending Full Payment | Total Payment |
|---|---|---|---|---|---|---|---|
| Hose-Man | 2b | | | $0.00 | | $0.00 | $0.00 |
| J&I Consulting, Inc. | 2b | | | $0.00 | | $0.00 | $0.00 |
| Jinah Oh | 2b | | | $0.00 | | $0.00 | $0.00 |
| Joan Park | 2b | | | $0.00 | | $0.00 | $0.00 |
| Jourdain DeWard | 2b | | | $0.00 | | $0.00 | $0.00 |
| Municipal Services Buerau | 2b | | | $0.00 | | $0.00 | $0.00 |
| Ocwen Loan Servicing | 2b | | | $0.00 | | $0.00 | $0.00 |
| Par Funding | 2b | | | $0.00 | | $0.00 | $0.00 |
| Prima Financial | 2b | | | $0.00 | | $0.00 | $0.00 |
| Resnik, Hayes, Moradi, LLP | 2b | | 3 | $77,382.00 | | $81,576.10 | $81,576.10 |
| San Bernardino County Tax Collector | 2b | | 7 | $7,510.90 | Unsecured portion of claim per Proof of Claim No. 7. | $112.66 | $8,862.86 |
| Sequoia Financial Services | 2b | | | $596.25 | | $628.57 | $628.57 |
| Small Business Administration | 2b | | | $96,904.91 | | $102,157.16 | $102,157.16 |
| State Compensation Insurance Fund | 2b | | | $184,726.52 | | $194,738.70 | $194,738.70 |
| Stephen M. Cook | 2b | | | $0.00 | | $0.00 | $0.00 |
| Synchrony Bank/Amazon | 2b | | | $0.00 | | $0.00 | $0.00 |
| Synchrony Bank/Chevron | 2b | | | $0.00 | | $0.00 | $0.00 |
| The Bank of Missouri/Milestone | 2b | | | $0.00 | | $0.00 | $0.00 |
| US Bank/RMS CC | 2b | | | $0.00 | | $0.00 | $0.00 |
| Zamucen & Curren, LLP | 2b | | | $0.00 | | $0.00 | $0.00 |
| TOTAL | | | | $1,382,087.38 | | $1,457,109.18 | $1,465,859.38 |
| Leases | | | | | | | |
| None | | | | 0 | | $0.00 | $0.00 |
| GRAND TOTAL | | | | $8,242,883.92 | | | $8,919,957.17 |

*Creditors with zero amounts are listed because they still show in title reports or in an abundance of caution.

** Unless a proof of claim has been filed and the Debtor indicates that a motion to disallow will NOT be filed, amounts are estimates abd a claim objection may be filed.

Exhibit "C"

**Fill in this information to identify your case and this filing:**

| Debtor 1 | Jong Uk Byun | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | | |
| | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number   2:23-bk-12747-VZ

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes. Where is the property?

**1.1**

2203 S. Alameda St.
Street address, if available, or other description

Los Angeles          CA      90058-0000
City          State          ZIP Code

Los Angeles
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
■ Other   Industrial

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $10,390,000.00 | $10,390,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

Fee simple

☐ Check if this is community property (see instructions)

**Value is from the formal valuation dated May 31, 2023.**

Debtor 1    Jong Uk Byun                                                Case number (if known)    2:23-bk-12747-VZ

**If you own or have more than one, list here:**

1.2

2445 S. Alameda St.

Street address, if available, or other description

| | |
|---|---|
| Los Angeles | CA   90058-0000 |
| City | State   ZIP Code |

Los Angeles

County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
■ Other    Industrial

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Value is from the formal valuation dated May 31, 2023.

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $4,990,000.00 | $4,990,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

Fee simple

☐ Check if this is community property
(see instructions)

---

**If you own or have more than one, list here:**

1.3

24399 Old Highway 58

Street address, if available, or other description

| | |
|---|---|
| Hinkley | CA   92347-0000 |
| City | State   ZIP Code |

San Bernardino

County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
■ Other    Industrial

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Value is an estimate which may be refined through further valuation.

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $500,000.00 | $500,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

Fee simple

☐ Check if this is community property
(see instructions)

Debtor 1    Jong Uk Byun                                              Case number *(if known)*    2:23-bk-12747-VZ

**If you own or have more than one, list here:**

1.4

1736 E. 24th St.

Street address, if available, or other description

Los Angeles         CA      90058-0000

City                State       ZIP Code

Los Angeles

County

**What is the property?** Check all that apply

☐ Single-family home

☐ Duplex or multi-unit building

☐ Condominium or cooperative

☐ Manufactured or mobile home

☐ Land

☐ Investment property

☐ Timeshare

☒ Other    Industrial

**Who has an interest in the property?** Check one

☒ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Value is from the formal valuation dated May 31, 2023.

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $6,010,000.00 | $6,010,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

Fee simple

☐ Check if this is community property (see instructions)

---

**If you own or have more than one, list here:**

1.5

1746 E 22nd St.

Street address, if available, or other description

Los Angeles         CA      90058-0000

City                State       ZIP Code

Los Angeles

County

**What is the property?** Check all that apply

☐ Single-family home

☐ Duplex or multi-unit building

☐ Condominium or cooperative

☐ Manufactured or mobile home

☒ Land

☐ Investment property

☐ Timeshare

☒ Other    Parking lot

**Who has an interest in the property?** Check one

☒ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Value is from the formal valuation dated May 31, 2023.

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $650,000.00 | $650,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

Fee simple

☐ Check if this is community property (see instructions)

---

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here........................................................................=>

| $22,540,000.00 |
|---|

**Part 2:**   Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Debtor 1    Jong Uk Byun                                    Case number *(if known)*   2:23-bk-12747-VZ

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No

☑ Yes

| 3.1 | Make: | Honda | Who has an interest in the property? *Check one* | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

| | | | | Current value of the entire property? | Current value of the portion you own? |
|---|---|---|---|---|---|

3.1   Make:   **Honda**
Model:   **Ridgeline**
Year:   **2017**
Approximate mileage:   **250,000**
Other information:

Location: 3439 Padua Ave., Claremont CA 91711

Who has an interest in the property? *Check one*

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Current value of the entire property?   **$12,618.00**

Current value of the portion you own?   **$12,618.00**

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No

☐ Yes

**5** Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here......................................................................................=>   **$12,618.00**

**Part 3:**  Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
☑ Yes. Describe.....

2 couches, 2 bookcases, 4 desks, 14 chairs, 2 tables, 10 lamps, 5 beds, mirror, refrigerator, stove, microwave, dishwasher, cookware, dishes, small appliances, washing machine, dryer, sewing machine, vacuum cleaner, tools;
Location: 3439 Padua Ave., Claremont CA 91711

$7,400.00

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
☑ Yes. Describe.....

3 TVs, radio, stereo, DVD player, 3 computers;
Location: 3439 Padua Ave., Claremont CA 91711

$1,200.00

**8. Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
☑ No
☐ Yes. Describe.....

**9. Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
☑ No

Debtor 1    Jong Uk Byun                                    Case number *(if known)*  2:23-bk-12747-VZ

☐ Yes. Describe.....

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
☐ No
■ Yes. Describe.....

| Personal clothing for Debtor and his family;<br>Location: 3439 Padua Ave., Claremont CA 91711 | $1,000.00 |
|---|---|

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☑ No
☐ Yes. Describe.....

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☑ No
☐ Yes. Describe.....

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses
☑ No
☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
☐ No
☑ Yes. Give specific information.....

| Blood pressure monitor;<br>Location: 3439 Padua Ave., Claremont CA 91711 | $20.00 |
|---|---|

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ................................................................. | **$9,620.00** |

**Part 4: Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?       Current value of the portion you own? Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☐ No
☑ Yes.....

|  | Cash | $358.00 |
|---|---|---|

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
☑ Yes.....      Institution name:

| 17.1. | Checking account number ending in 3703 | Wells Fargo Bank | $1,615.00 |
|---|---|---|---|

| Debtor 1 | Jong Uk Byun | | Case number *(if known)* | 2:23-bk-12747-VZ |

| | | Checking account number ending in | | |
|---|---|---|---|---|
| | 17.2. | 3541 | Hanmi Bank | $0.00 |

**18. Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
   ■ No
   ☐ Yes.................      Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
   ☐ No
   ■ Yes. Give specific information about them...................
                  Name of entity:                          % of ownership:

|  | | |
|---|---|---|
| Central Metal, Inc. | 100      % | Unknown |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
   ■ No
   ☐ Yes. Give specific information about them
                  Issuer name:

**21. Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
   ☐ No
   ■ Yes. List each account separately.
                  Type of account:            Institution name:

|  | | |
|---|---|---|
| SSI | SSI | $1,556.00 |

**22. Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
   ■ No
   ☐ Yes. .....................      Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
   ■ No
   ☐ Yes.............      Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
   ■ No
   ☐ Yes.............      Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
   ■ No
   ☐ Yes. Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
   ■ No
   ☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
   ■ No
   ☐ Yes. Give specific information about them...

Debtor 1    Jong Uk Byun _____    Case number (if known)  2:23-bk-12747-VZ

**Money or property owed to you?**                                                    Current value of the
                                                                                       portion you own?
                                                                                       Do not deduct secured
                                                                                       claims or exemptions.

28. **Tax refunds owed to you**
    ■ No
    ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    ■ No
    ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security
    benefits; unpaid loans you made to someone else
    ■ No
    ☐ Yes.  Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ☐ No
    ■ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| New York Life Insurance (Term Life) | Children | $0.00 |

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
    someone has died.
    ■ No
    ☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ☐ No
    ■ Yes.  Describe each claim.........

| | |
|---|---|
| Claim against PACKO INVESTMENTS, INC., A CALIFORNIA CORPORATION, ET AL, case number 23STCV07931. | Unknown |
| Possible claims against FA and Real Estate Broker | Unknown |

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes. Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached**
    **for Part 4. Write that number here**..................................................................................................................    $3,529.00

**Part 5:**  Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

Debtor 1    **Jong Uk Byun**                                         Case number *(if known)*  **2:23-bk-12747-VZ**

37. Do you own or have any legal or equitable interest in any business-related property?

   ■ No. Go to Part 6.

   ☐ Yes.  Go to line 38.

---

**Part 6:**  Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

---

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

   ■ No. Go to Part 7.

   ☐ Yes.  Go to line 47.

---

**Part 7:**      Describe All Property You Own or Have an Interest in That You Did Not List Above

---

53. **Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership
   ☐ No
   ■ Yes. Give specific information.........

   | Matthew Eanet | $0.00 |
   |---|---|

54.  Add the dollar value of all of your entries from Part 7. Write that number here ....................................         $0.00

---

**Part 8:**      List the Totals of Each Part of this Form

---

| | | |
|---|---:|---:|
| 55.  Part 1: Total real estate, line 2 ................................................................................................................... | | **$22,540,000.00** |
| 56.  Part 2: Total vehicles, line 5 | $12,618.00 | |
| 57.  Part 3: Total personal and household items, line 15 | $9,620.00 | |
| 58.  Part 4: Total financial assets, line 36 | $3,529.00 | |
| 59.  Part 5: Total business-related property, line 45 | $0.00 | |
| 60.  Part 6: Total farm- and fishing-related property, line 52 | $0.00 | |
| 61.  Part 7: Total other property not listed, line 54 + | $0.00 | |
| 62.  Total personal property. Add lines 56 through 61... | $25,767.00 | Copy personal property total      $25,767.00 |
| 63.  Total of all property on Schedule A/B. Add line 55 + line 62 | | $22,565,767.00 |

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Jong Uk Byun | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | 2:23-bk-12747-VZ | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

**Part 1:**  Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption.* | |
| **2017 Honda Ridgeline 250,000 miles** Location: 3439 Padua Ave., **Claremont CA 91711** Line from *Schedule A/B*: **3.1** | $12,618.00 | ■ $7,500.00 ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(2) |
| **2017 Honda Ridgeline 250,000 miles** Location: 3439 Padua Ave., **Claremont CA 91711** Line from *Schedule A/B*: **3.1** | $12,618.00 | ■ $5,118.00 ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| **2 couches, 2 bookcases, 4 desks, 14 chairs, 2 tables, 10 lamps, 5 beds, mirror, refrigerator, stove, microwave, dishwasher, cookware, dishes, small appliances, washing machine, dryer, sewing machine, vacuum cleaner, tools;** Location: 3439 Padua Ave., Clare Line from *Schedule A/B*: **6.1** | $7,400.00 | ■ $7,400.00 ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(3) |
| **3 TVs, radio, stereo, DVD player, 3 computers;** Location: 3439 Padua Ave., **Claremont CA 91711** Line from *Schedule A/B*: **7.1** | $1,200.00 | ■ $1,200.00 ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(3) |

Debtor 1   Jong Uk Byun

Case number (if known)   2:23-bk-12747-VZ

| Brief description of the property and line on Schedule A/B that lists this property | Current value of the portion you own<br>Copy the value from Schedule A/B | Amount of the exemption you claim<br>Check only one box for each exemption. | Specific laws that allow exemption |
|---|---|---|---|
| Personal clothing for Debtor and his family;<br>Location: 3439 Padua Ave., Claremont CA 91711<br>Line from Schedule A/B: **10.1** | $1,000.00 | ■ $1,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(3) |
| Blood pressure monitor;<br>Location: 3439 Padua Ave., Claremont CA 91711<br>Line from Schedule A/B: **14.1** | $20.00 | ■ $20.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(9) |
| Cash<br>Line from Schedule A/B: **16.1** | $358.00 | ■ $358.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| Checking account number ending in 3703: Wells Fargo Bank<br>Line from Schedule A/B: **17.1** | $1,615.00 | ■ $1,615.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| SSI: SSI<br>Line from Schedule A/B: **21.1** | $1,556.00 | ■ $1,556.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(10)(A) |
| New York Life Insurance (Term Life)<br>Beneficiary: Children<br>Line from Schedule A/B: **31.1** | $0.00 | ■ Unknown<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(11)(D) |
| Claim against PACKO INVESTMENTS, INC., A CALIFORNIA CORPORATION, ET AL, case number 23STCV07931.<br>Line from Schedule A/B: **33.1** | Unknown | ■ Unknown<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(11)(E) |
| Possible claims against FA and Real Estate Broker<br>Line from Schedule A/B: **33.2** | Unknown | ■ Unknown<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(11)(E) |

3.  Are you claiming a homestead exemption of more than $189,050?
    (Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

    ■  No

    ☐  Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

        ☐  No

        ☐  Yes

Exhibit "D"

JONG UK BYUN - PROJECTED MONTHLY CASH FLOW PER MONTH FOR NEXT 25 YEARS*

| Income Source | Month 1 | Annual |
|---|---|---|
| Jong's SSI | $1,560.00 | $18,720.00 |
| Management Fees** | $10,000.00 | $120,000.00 |
| Payment by CMI as Co-Debtor** | $10,000.00 | $120,000.00 |
| Rental Income - 1736 E 24th St. | $20,800.00 | $249,600.00 |
| Rental Income - 2445 S. Alameda St. | $15,190.00 | $182,280.00 |
| Rental Income - 2203 S. Alameda St. | $41,000.00 | $492,000.00 |
| Rental Income - 24399 State Highway 58 | $2,000.00 | $24,000.00 |
| | | |
| Total Income | $100,550.00 | $1,206,600.00 |
| | | |
| | | |
| 2203 S. Alameda Street | | |
| Mortgage | $0.00 | $0.00 |
| 2nd Mortgage | $0.00 | $0.00 |
| Property Taxes (Estimate) | $1,610.77 | $19,329.24 |
| Utilities | $0.00 | $0.00 |
| Repairs/Maintenance | $0.00 | $0.00 |
| Insurance | $128.08 | $1,536.96 |
| Telephone, cable, and internet | $0.00 | $0.00 |
| | | |
| | $1,738.85 | $20,866.20 |
| | | |
| 1736 East 24th Street | | |
| Mortgage | $0.00 | $0.00 |
| 2nd Mortgage | $0.00 | $0.00 |
| Property Taxes (Estimate) | $1,037.71 | $12,452.52 |
| Utilities | $0.00 | $0.00 |
| Repairs/Maintenance | $0.00 | $0.00 |
| Insurance | $128.08 | $1,536.96 |
| Telephone, cable, and internet | $0.00 | $0.00 |
| | | |
| | $1,165.79 | $13,989.48 |
| | | |
| 2445 S. Alameda Street | | |
| Mortgage | $0.00 | $0.00 |
| 2nd Mortgage | $0.00 | $0.00 |
| Property Taxes (Estimate) | $757.91 | $9,094.92 |
| Utilities | $0.00 | $0.00 |
| Repairs/Maintenance | $0.00 | $0.00 |
| Insurance | $128.08 | $1,536.96 |
| Telephone, cable, and internet | $0.00 | $0.00 |
| | | |
| | $885.99 | $10,631.88 |
| | | |
| 1746 East 22nd Street | | |
| Mortgage | $0.00 | $0.00 |

JONG UK BYUN - PROJECTED MONTHLY CASH FLOW PER MONTH FOR NEXT 25 YEARS*

| Income Source | Month 1 | Annual |
|---|---|---|
| 2nd Mortgage | $0.00 | $0.00 |
| Property Taxes (Estimate) | $517.00 | $6,204.00 |
| Utilities | $0.00 | $0.00 |
| Repairs/Maintenance | $0.00 | $0.00 |
| Insurance | $128.08 | $1,536.96 |
| Telephone, cable, and internet | $0.00 | $0.00 |
| | | |
| | $645.08 | $7,740.96 |
| 24399 Old (State) Highway 58 | | |
| Mortgage | $0.00 | $0.00 |
| 2nd Mortgage | $0.00 | $0.00 |
| Property Taxes (Estimate) | $517.25 | $6,207.00 |
| Utilities | $0.00 | $0.00 |
| Repairs/Maintenance | $0.00 | $0.00 |
| Insurance | $128.08 | $1,536.96 |
| Telephone, cable, and internet | $0.00 | $0.00 |
| | | |
| | $645.33 | $7,743.96 |
| | | |
| | | |
| Expenditures of Debtors | | |
| Food | $1,050.00 | $12,600.00 |
| Utilities | $1,580.00 | $18,960.00 |
| Housing | $4,000.00 | $48,000.00 |
| Clothing, laundry and dry cleaning | $70.00 | $840.00 |
| Medical and Dental | $50.00 | $600.00 |
| Health Insurance | $400.00 | $4,800.00 |
| Personal care & personal grooming | $60.00 | $720.00 |
| School Expenses | $0.00 | $0.00 |
| Transportation | $400.00 | $4,800.00 |
| Vehicle | $0.00 | $0.00 |
| Vehicle Insurance | $150.00 | $1,800.00 |
| Recreation, clubs, entertainment, etc. | $0.00 | $0.00 |
| | $7,760.00 | $93,120.00 |
| | | |
| Net Income | $88,354.04 | $1,060,248.48 |

*The Debtor understands that both income and expenses will likely increase over time but anticipates the ratio of income over expenses to remain equally favorable.

**Central Metal, Inc. will pay the Debtor for management services. The specific amount is still to be determined. In addition, since some of the debts the debtor incurred were incurred for funds used by CMI, CMI will pay certain debts.

Exhibit "E"

# Banking
# Banking

Allow people you trust to make payments, transfer money and monitor activity.
Manage Shared Users ›

| CHECKING & SAVINGS | CURRENT BALANCE | AVAILABLE BALANCE |
|---|---|---|
| ANY DEPOSIT CHECKING<br>xxxxxx7581 | $4,000.00 | $4,000.00 |
| ANY DEPOSIT CHECKING<br>xxxxxx7599 | $23,900.00 | $3,000.00 |
| ANY DEPOSIT CHECKING<br>xxxxxx7623 | $1,000.00 | $1,000.00 |
| FOR THE PLANET<br>ANY DEPOSIT CHECKING<br>xxxxxx3651 | $8,831.63 | $8,831.63 |
| ANY DEPOSIT CHECKING<br>xxxxxx7565 | $46,000.00 | $5,000.00 |
| ANY DEPOSIT CHECKING<br>xxxxxx7573 | $18,190.00 | $3,000.00 |

Exhibit "F"

**DECLARATION OF CALEB HALVERSON**

I, Caleb Halverson, hereby declare and state as follows:

1.      I am over the age of 18 years and a Certified General Appraiser. Except when based on information and belief, the facts stated herein are within my personal knowledge and if I am called upon to testify, I could and would do so competently thereto.

2.      I am a Certified General Real Estate Appraiser licensed by the State of California and my State of California Real Estate Appraiser's License Number is 3010951.

3.      I am one of the three appraisers of the real property owned by Jong Uk Byun, Assessor's Parcel Numbers: 5167-015-063, 5167-015-064, 5146-015-065, 5167-015-067 ("Property").

4.      On or about May 25, 2023, we appraised the Property. As shown in the appraisal report, the appraised market value of such property is $23,770,000. Attached hereto as Exhibit "1" is a true and correct copy of the appraisal report for the Property, which discloses all the data that we have used in forming my opinion.

5.      Although we cannot predict the economy or other variable factors, there is no evidence of a decline in value in the foreseeable future in the subject property, based on my review that I performed to prepare the appraisal report. Also, the subject property has not declined in value since the date of the appraisal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 24, 2023 in Los Angeles County, California.

Caleb Halverson, Declarant

-1-

*Exhibit "1"*

NEWMARK VALUATION & ADVISORY



# 1736 E. 24th Street, 2203-2245 Alameda Street

1736 E. 24th Street, 2203-2245 Alameda Street
Los Angeles, Los Angeles County, CA 90058

Newmark Job No.: 23-0187562-1

**Appraisal Report Prepared For:**

John Uk Byon
2203 South Alameda Street
Los Angeles, CA  90058

**Prepared By:**

**Newmark Valuation & Advisory**
117 East Colorado Blvd, Suite 200
Pasadena, CA 91105





NEWMARK



NEWMARK VALUATION & ADVISORY

May 31, 2023

John Uk Byon
2203 South Alameda Street
Los Angeles, CA 90058

RE:    Appraisal of an Industrial Land Site located at 1736 East 24th Street & 2203-2245
Alameda Street, Los Angeles, Los Angeles County, CA 90058, prepared by Newmark
Valuation & Advisory, LLC (herein "Firm" or "Newmark")

Newmark Job No.: 23-0187562-1

Dear Client

The subject is a 4.20-acre (182,817 SF) site in the City of Los Angeles. The asset consists of four
parcels that are irregular in shape and are near contiguous but a separated by a rail line and 24th
Street.

- APN 5167-015-063 is a 42,652 square-foot triangular site on the northwest corner of
  Alameda Street and 24th Street on the south side of the rail line. The site contains a
  1,682-square-foot building and a steel canopy.
- APN 5167-015-064 is a 74,179-square-foot site on the north side of the rail line. The
  site has frontage on 24th Street to the south and Alameda Street to the east. There is
  no rentable area on site and only contains ancillary, steel canopy structures.
- APN 5146-015-065 is a 14,577-square-foot site on the southwest corner of Alameda
  Street and 22nd Street. The site contains a steel canopy and is adjacent north of parcel
  5167-015-064.
- APN 5167-015-067 is a 51,409-square-foot, triangular site on the southeast corner of
  24th Street and Long Beach Avenue and is north of the rail line. The site includes two
  concrete buildings that total 2,322 square-feet.

The subject is located in the Central Los Angeles industrial market approximately 0.5 miles south
of the 10 Freeway.

The subject is occupied by an owner user for as an industrial storage yard. The highest and best
use of the site is to the value as one economic unit as the individual parcels are smaller, irregular
sites which negatively impacts potential use and development. Therefore, the allocated individual
sites values are discounted on a 10% basis relative to the value of the assets combined.



Newmark Valuation & Advisory
117 East Colorado Blvd, Suite 200
Pasadena, CA 91105
www.nmrk.com/valuation

May 31, 2023
John Uk Byon

## Key Value Considerations

### Strengths

- Good location in an established industrial district.
- Frontage on two primary commercial streets, Long Beach Avenue and Alameda Street.
- Investor demand for this asset type is strong as there is limited supply of industrial storage yards in Core Los Angeles markets.
- Good access to the 10 Freeway.

### Risk Factors

- The overall appeal of the asset is negatively impacted by the limited functional utility and development potential as the sites are not all contiguous (separated by a rail line and 24th Street).
- National and global economies have experienced record setting inflation and interest rates are rising. In an effort to curtail inflation, the Fed has embarked on an aggressive strategy by raising the Federal Funds Rate which in turn has increased mortgage and overall investment rates significantly since Q3 2022.
- These rate changes plus the general risk in the national and global economies in 2023 are impacting commercial capital markets activity (primarily fewer sales) and are impacting rent and expense growth modelling. These conditions are addressed in the report and have been considered in the final conclusions within this report.
- The general consensus is the decline in values from the recent peak, Summer 2022, have range from 5-20 percent (hotels at the low end and apartments/malls at the high end).

Based on the analysis contained in the following report, the opinion of value for the subject is:

| Value Conclusions | | | |
|---|---|---|---|
| Appraisal Premise | Interest Appraised | Date of Value | Value Conclusion |
| Market Value "As Is" | Fee Simple | 5/25/2023 | $23,770,000 |

*Compiled by Newmark*

Per the request of the client we have also provided an allocated value for the individual parcels. Due to the irregular configuration and smaller site sizes, a 10% discount has been made.



NEWMARK

1736 E. 24th Street, 2203-2245 Alameda Street

May 31, 2023
John Uk Byon

### Individual Site Allocations

| Address | APN | Land Area (SF) | Land Area (Acre) | Allocated Value PSF | Total Site Value | Rounded |
|---|---|---|---|---|---|---|
| 2245 Alameda Street | 5167-015-063 | 42,652 | 0.98 | $117.00 | $4,990,284 | $4,990,000 |
| 2203 Alameda Street | 5167-015-064 | 74,179 | 1.70 | $117.00 | $8,678,943 | $8,680,000 |
| 2203 Alameda Street | 5167-015-065 | 14,577 | 0.33 | $117.00 | $1,705,509 | $1,710,000 |
| 1736 E. 24th Street | 5167-015-067 | 51,409 | 1.18 | $117.00 | $6,014,853 | $6,010,000 |

**Combined Values**                                                                                          **$21,389,589**   **$21,390,000**

*Compiled by Newmark*

### Extraordinary Assumptions

An extraordinary assumption is defined in USPAP as an assignment-specific assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions. The value conclusions are subject to the following extraordinary assumptions that may affect the assignment results.

1.    None

### Hypothetical Conditions

A hypothetical condition is defined in USPAP as a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. The value conclusions are based on the following hypothetical conditions that may affect the assignment results.

1.    None

The appraisal was developed based on, and this report has been prepared in conformance with the Client's appraisal requirements, the guidelines and recommendations set forth in the Uniform Standards of Professional Appraisal Practice (USPAP), and the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.



NEWMARK

# Certification

We certify that, to the best of our knowledge and belief:

1.  The statements of fact contained in this report are true and correct.
2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are our personal, impartial and unbiased professional analyses, opinions, and conclusions.
3.  We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
4.  We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
5.  Our engagement in this assignment was not contingent upon developing or reporting predetermined results.
6.  Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
7.  This appraisal assignment was not based upon a requested minimum valuation, a specific valuation, or the approval of a loan.
8.  Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice, as well as the requirements of the State of California.
9.  The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.
10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.
11. Geoff Papp made a personal inspection of the property that is the subject of this report. Berick Treidler and Caleb Halverson have not personally inspected the subject.
12. No one provided significant real property appraisal assistance to the person(s) signing this certification.
13. The Firm operates as an independent economic entity. Although employees of other service lines or affiliates of the Firm may be contacted as a part of our routine market research investigations, absolute client confidentiality and privacy were maintained at all times with regard to this assignment without conflict of interest.
14. Within this report, "Newmark", "Newmark Valuation & Advisory", "Newmark, Inc.", and similar forms of reference refer only to the appraiser(s) who have signed this certification and any persons noted above as having provided significant real property appraisal assistance to the persons signing this report.
15. Berick Treidler has not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment. Geoff Papp has not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment. Caleb Halverson has not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.



CERTIFICATION                                                                                          6

Berick Treidler
*Senior Managing Director*
Certified General Real Estate Appraiser
California # AG008775
Telephone: 213.596.2236
Email: Berick.Treidler@nmrk.com

Geoff Papp
*Associate Director*
Certified General Real Estate Appraiser
California # AG026317
Telephone: 626.204.3767
Email: geoff.papp@nmrk.com

Caleb Halverson
*Senior Appraiser*
Certified General Real Estate Appraiser
California # 3010951
Telephone: 626.204.3773
Email: caleb.halverson@nmrk.com

NEWMARK                                            1736 E. 24th Street, 2203-2245 Alameda Street

Full Appraisal on file with the Court or may be
obtained by requesting it from counsel for the
Debtor at go@gobklaw.com or 213-389-4362

## DECLARATION OF CALEB HALVERSON

I, Caleb Halverson, hereby declare and state as follows:

1.    I am over the age of 18 years and a Certified General Appraiser. Except when based on information and belief, the facts stated herein are within my personal knowledge and if I am called upon to testify, I could and would do so competently thereto.

2.    I am a Certified General Real Estate Appraiser licensed by the State of California and my State of California Real Estate Appraiser's License Number is 3010951.

3.    I am one of the three appraisers of the real property owned by Jong Uk Byun, Assessor's Parcel Number: 5167-015-068 ("Property").

4.    On or about May 25, 2023, we appraised the Property. As shown in the appraisal report, the appraised market value of such property is $650,000. Attached hereto as Exhibit "1" is a true and correct copy of the appraisal report for the Property, which discloses all the data that we have used in forming my opinion.

5.    Although we cannot predict the economy or other variable factors, there is no evidence of a decline in value in the foreseeable future in the subject property, based on my review that I performed to prepare the appraisal report. Also, the subject property has not declined in value since the date of the appraisal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 24, 2023 in Los Angeles County, California.

Caleb Halverson, Declarant

-1-

*Exhibit "1"*

NEWMARK VALUATION & ADVISORY

# 1746 East 22nd Street



1746 East 22nd Street
Los Angeles, Los Angeles County, CA 90058

Newmark Job No.: 23-0187562-4

**Appraisal Report Prepared For:**

John Uk Byon
2203 South Alameda Street
Los Angeles, CA  90058

**Prepared By:**

**Newmark Valuation & Advisory**
117 East Colorado Blvd, Suite 200
Pasadena, CA 91105





NEWMARK





NEWMARK VALUATION & ADVISORY

May 31, 2023

John Uk Byon
2203 South Alameda Street
Los Angeles, CA 90058

RE:   Appraisal of an Industrial Land Site at 1746 East 22nd Street, Los Angeles, Los Angeles
County, CA 90058, prepared by Newmark Valuation & Advisory, LLC (herein "Firm" or
"Newmark")

Newmark Job No.: 23-0187562-4

Dear Client

The subject is a 0.12-acre (5,016 SF) site on the south side of 22nd Street in the City of Los
Angeles. The asset is a mid-block parcel in between Long Beach Avenue and Alameda Street in
a primary industrial market. The site has good regional access as it situated 0.5 miles south of
the 10 Freeway. The subject site is paved and is gate accessed and is used for car parking.

**Key Value Considerations**

**Strengths**

- Good location in an established industrial district.

- Good local access in proximity to Long Beach Avenue and Alameda Street.

- Investor demand for this asset type is strong as there is limited supply of industrial
storage yards in Core Los Angeles markets.

- Good access to the 10 Freeway.

- The small size lowers the total dollar investment and it would appeal to all adjoining
property owners as use for parking or storage could be accretive to the value of their
existing asset.

**Risk Factors**

- The overall appeal of the asset is negatively impacted by smaller size as it limits the
onsite development potential and use of the site.

- National and global economies have experienced record setting inflation and interest
rates are rising. In an effort to curtail inflation, the Fed has embarked on an aggressive
strategy by raising the Federal Funds Rate which in turn has increased mortgage and
overall investment rates significantly since Q3 2022.


NEWMARK

Newmark Valuation & Advisory
117 East Colorado Blvd, Suite 200
Pasadena, CA 91105
www.nmrk.com/valuation

May 31, 2023
John Uk Byon

— These rate changes plus the general risk in the national and global economies in 2023 are impacting commercial capital markets activity (primarily fewer sales) and are impacting rent and expense growth modelling. These conditions are addressed in the report and have been considered in the final conclusions within this report.

— The general consensus is the decline in values from the recent peak, Summer 2022, have range from 5-20 percent (hotels at the low end and apartments/malls at the high end).

Based on the analysis contained in the following report, the opinion of value for the subject is:

| Value Conclusions | | | |
|---|---|---|---|
| Appraisal Premise | Interest Appraised | Date of Value | Value Conclusion |
| Market Value "As Is" | Fee Simple | 5/25/2023 | $650,000 |

Compiled by Newmark

### Extraordinary Assumptions

An extraordinary assumption is defined in USPAP as an assignment-specific assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions. The value conclusions are subject to the following extraordinary assumptions that may affect the assignment results.

1.    None

### Hypothetical Conditions

A hypothetical condition is defined in USPAP as a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. The value conclusions are based on the following hypothetical conditions that may affect the assignment results.

1.    None

The appraisal was developed based on, and this report has been prepared in conformance with the Client's appraisal requirements, the guidelines and recommendations set forth in the Uniform Standards of Professional Appraisal Practice (USPAP), and the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

NEWMARK

# Certification

We certify that, to the best of our knowledge and belief:

1.  The statements of fact contained in this report are true and correct.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are our personal, impartial and unbiased professional analyses, opinions, and conclusions.

3.  We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.  We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5.  Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

6.  Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7.  This appraisal assignment was not based upon a requested minimum valuation, a specific valuation, or the approval of a loan.

8.  Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice, as well as the requirements of the State of California.

9.  The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10.  The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11.  Geoff Papp made a personal inspection of the property that is the subject of this report. Berick Treidler and Caleb Halverson have not personally inspected the subject.

12.  No one provided significant real property appraisal assistance to the person(s) signing this certification.

13.  The Firm operates as an independent economic entity. Although employees of other service lines or affiliates of the Firm may be contacted as a part of our routine market research investigations, absolute client confidentiality and privacy were maintained at all times with regard to this assignment without conflict of interest.

14.  Within this report, "Newmark", "Newmark Valuation & Advisory", "Newmark, Inc.", and similar forms of reference refer only to the appraiser(s) who have signed this certification and any persons noted above as having provided significant real property appraisal assistance to the persons signing this report.

15.  Berick Treidler has not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment. Geoff Papp has not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment. Caleb Halverson has not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.

NEWMARK

CERTIFICATION                                                                                     5


Berick Treidler
*Senior Managing Director*
Certified General Real Estate Appraiser
California # AG008775
Telephone: 213.596.2236
Email: Berick.Treidler@nmrk.com

Geoff Papp
*Associate Director*
Certified General Real Estate Appraiser
California # AG026317
Telephone: 626.204.3767
Email: geoff.papp@nmrk.com


Caleb Halverson
*Senior Appraiser*
Certified General Real Estate Appraiser
California # 3010951
Telephone: 626.204.3773
Email: caleb.halverson@nmrk.com


NEWMARK                                                             1746 East 22nd Street

Full Appraisal on file with the Court or may be obtained by requesting it from counsel for the Debtor at go@gobklaw.com or 213-389-4362

Exhibit "G"

# Lease Agreement Chart

1)

| Property: **2445 S. Alameda Street** | | |
|---|---|---|
| Tenant | Term | Rent Amount |
| Kim Ki Joong | Month to Month | $2,500.00 |
| Allison & Diesel Transmission Parts | 4/10/2020-4/10/2025 | $12,690.00 |

2)

| Property: **2203 S. Alameda St.** | | |
|---|---|---|
| Tenant | Term | Rent Amount |
| Union CM, Inc. | 11/01/2019-11/01/2024 | $41,000.00 |

3)

| Property: **1736 E. 24th St.** | | |
|---|---|---|
| Tenant | Term | Rent Amount |
| Union CM, Inc. | 11/01/2019-11/01/2024 | $20,800.00 |

4)

| Property: **24399 State Highway 58** | | |
|---|---|---|
| Tenant | Term | Rent Amount |
| Union CM, Inc. | 11/01/2019-11/01/2024 | $2,000.00 |

**Rents Total:**                    $78,990.00

Exhibit "H"

EXHIBIT H

| Claim Amount (less paid to date) ☒ Actual ☐ Estimated | Interest Rate (§511) | Amount Paid on Effective Date | Amount Paid After Effective Date | | | |
|---|---|---|---|---|---|---|
| **Claimant:** Internal Revenue Service (Proof of Claim No. 4) | | | | | | |
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |
| $1,877,834.00 | 7% | $10,954.03 | ☒ Monthly ☐ Quarterly | $10,954.03 | $1,877,834.00 | Payable 12 months from Effective Date with interest payments in prior months for no more than 12 months. |

Exhibit "I"

EXHIBIT I

| ☒ **CLASS #4d** | **Claimant:** Mohamed Sanfaz (Packo Investments, Inc., as assignee) |
|---|---|
| | **Basis for secured status:** Judgment and Deeds of Trust |
| | **Priority of lien: Varies by Property** |
| | ☐ Lien is not modified in any way. |
| | ☒ Lien is modified as follows: It is deemed satisfied upon full payment under this Plan. Holder must record a Satisfaction of Judgment as required by applicable law upon payment under this Plan, which shall constitute full satisfaction of such lien. With respect to deeds of trust, this claim is deemed reconveyed upon full payment under this Plan. Holder must record a reconveyance as required by applicable law upon payment under this Plan, which shall constitute full satisfaction of such lien. |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $743,291.77 | $817,620.95 | 10% | Effective Date | $6,194.10 with balloon payment of $743,291.77 | Monthly with balloon payment no later than 12 months after Effective Date | 12 | 12 Months from Effective Date |

| **Address or Other Description of Collateral Securing Claim 4d:** Los Angeles, California properties with addresses of (1) 2245 Alameda Street, APN 5167-015-063; (2) 2203 Alameda Street, APN 5167-015-065; (3) 2203 Alameda Street, APN 5167-0105-065; (4) 1736 E. 24th Street, APN 5167-015-067 and (5) 1746 East 22nd Street (APN 5167-015-068) | | |
|---|---|---|
| **Value:** $24,000,000 | **Valuation Method** | ☐ Order on motion or stipulation ☒ Declaration: Certified appraiser ☒ Other: Debtor as owner |

☒    Additional Comments relating to Class #4d.
        **None.**

| | |
|---|---|
| ☒ **CLASS #4e** | **Claimant:** Southern Counties Oil, Co. |
| | **Basis for secured status:** Property Taxes |
| | **Priority of lien:** Top priority. |
| | ☐ Lien is not modified in any way. |
| | ☒ Lien is modified as follows: It is deemed satisfied upon full payment under this Plan. Holder must record a release the lien as required by applicable law upon payment under this Plan, which shall constitute full satisfaction of such lien. |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $81,590.14 | $96,276.37 | 18% | Effective Date | $1,223.85 with balloon payment of $81,590.14 | Monthly with balloon payment no later than 12 months after Effective Date | 12 | 12 Months from Effective Date |

| | | |
|---|---|---|
| **Address or Other Description of Collateral Securing Claim 4e: Parcels 0497192040000, 0497192090000 and 0497192100000 in the county of San Bernardino.** | | |
| **Value:** $500,000 | **Valuation Method** | ☐ Order on motion or stipulation ☐ Declaration: Certified appraiser <br> ☒ Other: Debtor as owner |

☒ Additional Comments relating to Class #4e:
**Total payment may differ if this claim is paid early.**

| ☒ **CLASS #4f** | **Claimant:** Southern Counties Oil, Co. |
|---|---|
| | **Basis for secured status:** Judgment for Goods Sold |
| | **Priority of lien:** Varies by Property. |
| | ☐ Lien is not modified in any way. |
| | ☒ Lien is modified as follows: It is deemed satisfied upon full payment under this Plan. Holder must record a Satisfaction of Judgment as required by applicable law upon payment under this Plan, which shall constitute full satisfaction of such lien. |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $14,213.24 | $15,049.33 | 10% | Effective Date | $118.44 with balloon payment of $14,213.24 | Monthly with balloon payment no later than 12 months after Effective Date | 12 | 12 Months from Effective Date |

| **Address or Other Description of Collateral Securing Claim 4e:** Some or all of the following Los Angeles, California properties with addresses of (1) 2245 Alameda Street, APN 5167-015-063; (2) 2203 Alameda Street, APN 5167-015-065; (3) 2203 Alameda Street, APN 5167-0105-065; (4) 1736 E. 24th Street, APN 5167-015-067 and (5) 1746 East 22nd Street (APN 5167-015-068) | | |
|---|---|---|
| **Value:** $24,000,000 | **Valuation Method** | ☐ Order on motion or stipulation  ☒ Declaration: Certified appraiser<br>☒ Other: Debtor as owner |

☒    Additional Comments relating to Class #4f:
        **None.**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3435 Wilshire Blvd., 27th Floor
Los Angeles, CA 90010**


A true and correct copy of the foregoing document entitled (*specify*): **1ˢᵗ Amended Disclosure Statement And Plan Of Reorganization [11 U.S.C. §§ 1123, 1125]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:


**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 27, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Melody G Anderson on behalf of Creditor Creditors Adjustment Bureau, Inc.
manderson@kjfesq.com

Katrina M Brown on behalf of Creditor Titan Asset Purchasing, LLC
kbrown@pskbfirm.com

Matthew L Eanet on behalf of Debtor Jong Uk Byun
matt@eanetpc.com, sara@eanetpc.com

Barry S Glaser on behalf of Creditor San Bernardino County Tax Collector
bglaser@salvatoboufadel.com, gsalvato@salvatoboufadel.com;Jboufadel@salvatoboufadel.com;gsalvato@ecf.courtdrive.com

David W. Meadows on behalf of Creditor Packo Investments, Inc. as Assignee of The Bae Family Trust
david@davidwmeadowslaw.com

David W. Meadows on behalf of Creditor Packo Investments, Inc. as Assignee of The Bae Family Trust, and Packo Investments, Inc. as Assignee of Mohamed Sanfaz
david@davidwmeadowslaw.com

David W. Meadows on behalf of Creditor Packo Investments, Inc., as Assignee of Mohamed Sanfaz
david@davidwmeadowslaw.com

David W. Meadows on behalf of Interested Party Courtesy NEF
david@davidwmeadowslaw.com

Kelly L Morrison on behalf of U.S. Trustee United States Trustee (LA)
kelly.l.morrison@usdoj.gov

Giovanni Orantes on behalf of Debtor Jong Uk Byun
go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com

Matthew D. Resnik on behalf of Interested Party Courtesy NEF
Matt@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;sloan@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;russ@rhmfirm.com

Gregory M Salvato on behalf of Creditor San Bernardino County Tax Collector
gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **September 21, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA PRIORITY MAIL**
United States Bankruptcy Court
Honorable Vincent P. Zurzolo
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 21, 2023 | Andrea M. Castro | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**